[Civ. No. 5820. Second Appellate District, Division One.—August 6, 1928.]

LEO JEDLICKA et al., Respondents, v. ATWELL LAND COMPANY (a Corporation) et al., Appellants.

456

Dryer, Castle & Hartke for Appellants.

Robert Brennan for Respondents.

CONREY, P. J.—Pursuant to verdict of the jury, judgment was entered in favor of the plaintiffs against defendant Atwell Land Company in the sum of $10,000 and against the defendant John W. Childress in the sum of $9,997, and against two other defendants in the sum of one dollar each. The corporation and Childress appeal from the judgment.

The alleged contract was fully set forth by copy in the complaint. On the face of the document it purported to be executed by the sellers, plaintiffs herein, and by the corporation by its president and secretary duly authorized so to do by resolution of the board of directors. The contract as executed bore the seal of the corporation. By the terms of the writing, dated August 16, 1921, the sellers

agreed to sell to the buyer certain described real property and the buyer agreed to purchase the same and pay therefor the sum of $87,500, of which total sum the buyer was to pay on September 1, 1922, $45,000 and the remainder in two equal installments payable respectively on September 1, 1923, and March 1, 1924, with interest as specified: "Provided, however, that no interest whatsoever shall be paid until September 1st, 1922, but during the existence of this contract prior to said September 1st, 1922, the sellers shall have and enjoy the exclusive possession of said property (subject to the oil lease to Lisle B. Tannehill hereinafter referred to) and shall deliver the same to the buyer on said 1st day of September, 1922." It was agreed that upon payment of the purchase price the sellers should grant said property to the buyer clear of all incumbrances, except certain taxes and rights of way and reservations, and subject to said Tannehill oil lease.

The first point of appellants is stated thus: "The Atwell Land Company is not bound by a contract purported to be authorized by resolution of its board of directors, all of whom were personally interested adversely to the Atwell Land Company in voting for said resolution." The board of directors consisted of three persons, R. M. Martin, E. S. Shenk, and C. B. Guittard; Martin was president and Guittard secretary. A meeting of the board of directors was held on August 16, 1921, pursuant to written consent of all of the directors, although Martin was absent from the meeting. It was at this meeting that the resolution was adopted authorizing the execution of said contract.

The contention of appellants is that all of these directors were interested in the purchase of the land, adversely to the corporation, because of an agreement among the three that they should share equally all the profits to be derived from the purchase of the land; that the votes of the directors were and each was a nullity.

It appears that the plaintiffs had their dealings with the company through its board of directors, without any knowledge or notice of any disqualification of said directors or personal agreements beteween them. Nevertheless appellant contends that the company received no benefit from the contract sued upon, and that respondents suffered no prejudice in reliance upon any apparent authority of said officers; that

respondents did not exercise reasonable diligence to ascertain the authority of the officers executing the contract, and therefore the company should not be deemed bound by the contract.

Since it appears that the three persons named actually were members and constituted the entire membership of the board of directors, it becomes immaterial that the plaintiffs did not use diligence to ascertain their authority. No mistake was made in the personnel of the board with which plaintiffs dealt as representing the corporation. No suggestion is made of facts which gave notice to plaintiffs that there was anything irregular or fraudulent in the conduct of the directors, or that they had entered into any agreements which were adverse to the interests of the corporation. The evidence to which appellants refer as establishing such adverse interests is found in the testimony of Martin, Guittard, and Shenk, all to the effect that Martin had promised the other two that he would divide equally with them the profits to be derived from the purchase of this land by the corporation. The motive for obtaining such a promise from Martin is better understood when it is noted that at the time when it was given he was the owner of substantially all of the stock of the corporation. This agreement to split the profits would therefore have been necessary as between themselves if they wished to prevent Mr. Martin from absorbing practically all of the profits made by the corporation. As to the corporation itself, the ultimate division of profits as between its stockholders would be an indifferent matter, for such division could only be made out of dividends declared and paid. The evidence does not tend to prove any agreement that the profits should not, primarily, be property of the corporation.

The 120 acres of land which defendant corporation agreed to purchase from the plaintiffs was part of a larger property (380 acres) conveyed to Leo Jedlicka in December, 1919. On the thirty-first day of that month Jedlicka executed to L. B. Tannehill the oil lease mentioned in the contract with defendant corporation. At the same time Tannehill signed and delivered to Jedlicka a letter reading as follows:

"In consideration of the fact that you and your wife sign the oil lease herewith handed to you in my favor and that

you and your wife unconditionally convey your title to the 380 acres known as the Sterling Ranch, Riverside County, to Edwin L. Wilhite, subject to encumbrance on same; I agree to purchase from Edwin L. Wilhite the title to the 120 acres on the east side of the road, subject to all easements and conditions now upon said 120 acres. And I further agree to pay or cause to be paid and discharged all encumbrances in the nature of trust deeds, mortgages or taxes on said one hundred and twenty acres (120), and hold same until September, the 15th, 1922, during which period I will sell to you the said one hundred twenty (120) acres for the total sum of forty-five thousand ($45,000) dollars, provided, however, if you purchase said lands under this letter agreement that you will receive the title to same subject to that certain lease heretofore mentioned executed by you and your wife in my favor, you to have the use and possession for agricultural purposes until Sept. 15, 1922. Time is the essence hereof.''

In accordance with the propositions contained in said letter, the plaintiffs conveyed the 380 acres to Wilhite and delivered the oil lease to Tannehill. The plaintiffs, however, remained in actual possession of said 120 acres, until some time in the year 1923. During the time of that occupancy, prior to the breach of contract by defendant company, plaintiffs purchased an outstanding equity in the property. Also, during said period of occupancy, and prior to the contract with defendants, the plaintiffs, according to their testimony, expended about $7,000 in improvements on the premises.

The plaintiffs pleaded as a cause of special damages, that by reason of the failure of defendants to pay the $45,000 installment which under the contract fell due on September 1, 1922, they were unable to pay the $45,000 which, under the Tannehill agreement, they were required to pay on or before the 15th of that month in order to complete their purchase of the land from Tannehill. The evidence is that the occupancy of plaintiffs thenceforth was under a rental agreement. It is obvious that if said installment had been paid, plaintiffs would have been able to pay Tannehill. There is, on the other hand, no direct testimony that they did not have other funds with which to make such payment.

But the case for the plaintiffs does not entirely depend on proof of the alleged special damage. There is abundant evidence that at the time of breach by defendant corporation, of its contract, the market value of the land had fallen so far below the contract price, that such value was far more than $10,000 below the contract price. Having first failed to pay in accordance with its agreement, defendant corporation admitted the nonpayment but denied that it made the contract, and denied the resulting damage. The record, as we view it, amply proves the contract, the breach and the damage. The judgment against the corporation should be affirmed.

Appellant Childress attacks the judgment rendered against him as a stockholder in the defendant corporation. He contends that the court erred in the admission of certain evidence against him; and that these errors were prejudicial because the evidence was conflicting upon the point as to whether he was a stockholder at the time when the contract was made. In relation to this matter appellant Childress contends that the court erroneously permitted cross-examination and impeachment of Childress; (a) "upon the irrelevant matter of when John W. Childress first knew of the contract sued upon, because such cross-examination was upon a wholly irrelevant matter"; and (b) "To permit contradiction of appellant Childress in the same respect by letters which were not relevant to the issues or binding upon him."

The liability of Childress depends upon proof of the fact that on August 16, 1921, he was the owner of 9,997 shares of stock of defendant corporation. These were shares that had belonged to Martin. According to the testimony of Childress, Martin had pledged these shares to him as security for certain contract obligations. Upon failure of Martin to perform his agreement, Childress caused the shares to be sold on the ninth day of August. Childress testified: "I had a sale and sold it at the court house. . . . I sold to J. W. Childress, myself." He further testified that Martin claimed that the sale was not legal, and that the new certificate was not received by him, Childress, until the second day of November. On the other hand, there was produced in evidence the stock-book, containing the stub from which the certificate issued to Childress had been detached. The stub identified the certificate and the transfer from Martin, and

contained the signature of Childress immediately below these words: "Received certificate No. 17 for 9997 shares, this 9th day of August, 1921." C. B. Guittard, secretary of the corporation, testified that Childress made said signature in his, Guittard's presence, on August 9, 1921, and that the certificate was delivered to Childress at that time.

■ The errors claimed by appellant Childress, in connection with his cross-examination, relate to questions asked after he had testified that he did not receive the certificate until November. Under the first of these assignments of error the record indicates that the questions were asked for the purpose of obtaining from Childress an admission that in the year 1921 he knew that the Jedlicka premises were supposed to be oil land and that he knew of the Atwell Land Company contract. As the witness by his replies denied that he knew anything at all about the land at that time, we are unable to see anything prejudicial in the questions, even if, as claimed, the matters involved were not relevant to the issues. The letters referred to in the second of these assignments of error in the court's rulings, were a letter of date March 17, 1922, addressed to Mr. Shenk (director of Atwell Land Company as hereinbefore shown), by Mr. Follette, who was the attorney of Childress in the transactions relating to the Martin-Childress controversy, and Shenk's reply thereto. The letters refer to the company's interest in the Jedlicka property, and were introduced after Childress had admitted that Follette spoke to him "something about a letter he got from Mr. Shenk," but had denied that he read the letter or at that time knew anything about the Jedlicka property. Mr. Shenk, however, testified that late in 1921, or at the beginning of 1922, he talked with Childress about the Jedlicka property, and that Childress said, "I must see Mr. Follette." Here again we find nothing prejudicial, even if erroneous, in the admission of the evidence. It was not of great importance in relation to the principal question affecting Childress, viz., whether he was a stockholder of the Atwell Land Company on the sixteenth day of August, 1921. There is in evidence a letter signed by Childress, of date September 27, 1921, and addressed to Martin, in which Childress, while agreeing to the calling of a meeting of the company for certain purposes, specifically does so on condition that he does not in any way admit any

irregularity or illegality whatsoever in "that certain pledgee's sale wherein the capital stock of the Atwell Land Company was sold, delivered and transferred to John W. Childress." This is strongly confirmatory of the stub-book and of the secretary's testimony showing that the stock transfer to Childress was completed on August 9, 1921, a week before the Jedlicka contract was made.

■ Finally, appellant insists that the court should have granted his motion for a new trial, upon the ground of newly discovered evidence tending to prove that the pledgee's sale (or a pledgee's sale) of the Martin stock, actually occurred at a date subsequent to August 16, 1921. The documents referred to in the affidavits were in the actual custody of Mr. Follette, who had been the attorney of Childress, although he ceased to be such attorney prior to the trial of this action. The court apparently was not satisfied that due diligence had been used to discover and obtain the documents for use at the trial, or that their presentation would have changed the result of the action. We do not find any abuse of discretion in the denial of the motion.

■ Incidentally it may be noted that the affidavits are found only in the clerk's transcript, and this part of the record was not made part of the reporter's transcript, nor was it certified by the judge. This is not sufficient. (*Jeffords* v. *Young,* 197 Cal. 224, 227, 228 [239 Pac. 1054].)

The judgment is affirmed. The appeal from the order dismissing the action as against defendant R. M. Martin has not been argued or presented in any way, and the same is dismissed. The appeal from the order denying motion for a new trial, being an attempted appeal from a nonappealable order, is dismissed.

Houser, J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 5, 1928, and the following opinion then rendered thereon:

THE COURT.—On petition for rehearing. Petitioners are in error in their suggestion that this court held that at the date of the contract of August 16, 1921, R. M. Martin was not the owner of any stock in defendant corporation.

Implicitly it was admitted by the pleadings that Martin remained the owner of one share; in other words, Martin had owned 9,998 shares and had reserved one share from his pledge to Childress. The testimony of Martin confirms this fact.

The fact that the vendors at the time of making their contract with defendant corporation did not own the land, but had only those rights referred to in the decision herein, has not that supreme importance which has been insisted upon by appellants. ▆ Where a vendee contracts with one having none or an imperfect title, he contracts in the hope or expectation that the vendor may be able to perfect the title. (*Brimmer* v. *Salisbury*, 167 Cal. 522, 531 [140 Pac. 30]; *Kerr* v. *Reed*, 39 Cal. App. 11, 16 [179 Pac. 399].) In the absence of fraud or misrepresentation of any kind, such imperfection of title does not destroy the validity of the contract. ▆ Of course, it is true that on an installment contract, when the time arrives for making the final payment of consideration, the vendor must be prepared to convey a sufficient title. But under such a contract the vendor's right to compel payment of intermediate installments of the purchase price does not depend upon the present existence of a complete title in the vendor.

While the assignments of error made by appellant in relation to instructions to the jury were not discussed in the opinion of the court, the court did not fail to give to them what we deemed to be sufficient consideration. If there were any errors in said instructions, we are of the opinion that such errors were of minor importance in relation to the case and did not probably affect the verdict.

The petition for rehearing is denied.

York, J., absent.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 4, 1928.

All the Justices present concurred.