[Civ. No. 12246. Second Appellate District, Division One.— March 17, 1941.]

JOHN EUSTACE, Jr., Appellant, v. E. A. LYNCH et al., Respondents.

Caryl Warner for Appellant.

Baldwin Robertson and Raphael Dechter for Respondents.

YORK, P. J.—This is an action to recover damages for an alleged trespass and conversion of property.

It appears from the record herein that appellant's assignor, John M. Eustace, on September 9, 1934, and for many years theretofore had been engaged in the plumbing business at two locations in the city of Los Angeles under the name of Eustace Plumbing Company; that on August 23, 1934, there was filed by respondent creditors Oil Tool Exchange, Inc., Spiers & Meadows, and A. M. Kupfer, in the District Court of the United States for the Southern District of California, a petition in involuntary bankruptcy directed against the wife

of John M. Eustace, to wit: "Katie M. Eustace . . . doing business as Eustace Plumbing Company"; that on September 7, 1934, pursuant to the petition of respondent Kupfer, said court made its order appointing respondent E. A. Lynch "Receiver of all property of whatsoever nature and wheresoever located, now owned by or in the possession of said bankrupt"; and on September 8th, respondent United States Fidelity & Guaranty Company posted its bond in the sum of $5,000 conditioned upon the faithful performance by the receiver of the duties pertaining to his office.

It is alleged in the complaint that on or about September 7, 1934, said respondents "maliciously, wilfully and with intent to vex, annoy, injure and defraud plaintiff's assignor . . . and to ruin and damage . . . said plumbing business, did cause, assist and procure said defendants E. A. Lynch, individually and as Receiver of the estate of Katie M. Eustace, an alleged bankrupt, to enter upon the said premises of said plumbing business of plaintiff's assignor . . . and to appropriate the same and all of its business, fixtures and property . . . to his and defendants' exclusive use and possession"; that on September 9, 1934, said receiver and respondents wilfully and unlawfully entered the premises of the said plumbing business, and with knowledge of the fact that ownership of the plumbing business "was in plaintiff's assignor, John M. Eustace (and) that the said alleged bankrupt, Katie M. Eustace, at no time possessed any right, title or interest in and to said Eustace Plumbing Company or the properties of said business, and was not in possession thereof", did thereupon dispossess said John M. Eustace and "said defendants and each of them did thereupon remain in the sole and exclusive possession of said plumbing shops and of said plumbing business continuously up to and including the 15th day of May, 1935 . . . without the consent and against the will of plaintiff's assignor; that by reason thereof . . . the said business . . . was ruined and destroyed"; all to the detriment and damage of John M. Eustace, who on July 1, 1937, assigned all his right, title and interest in the aforesaid plumbing business and in the cause of action here sued upon to his son, appellant John Eustace, Jr.

Respondents in their answers set forth denials, justification under the federal court order, and also an affirmative defense of a release of claims, to wit:

"Los Angeles, Cal., January 29, 1935

"Mr. Raphael Dechter, 825 Stock Exchange Bldg., Los Angeles, California.

"Dear Sir: This will verify the fact that in consideration of your arranging to dismiss the bankruptcy proceedings now pending against Katie M. Eustace in the United States District Court, for this District, No. 23770–C, the undersigned do hereby agree that they will and do hereby release the Oil Tool Exchange, Inc., Spiers & Meadows, and A. M. Kupfer, as well as E. A. Lynch, and yourself and any and all other persons heretofore connected with said bankruptcy proceeding from any claim of any kind whatsoever arising out of said bankruptcy proceedings and hereby agree to forbear from any legal proceedings by virtue of anything done by the above named parties in and about said bankruptcy proceedings.

"Very truly yours,

"KATIE M. EUSTACE

"JOHN M. EUSTACE

"JOHN EUSTACE (JR.)

."J. A. GRIFFITH."

At the trial herein, appellant made several offers of proof: first, he made a long opening statement which he subsequently adopted as an offer of proof after he was placed on notice that the trial court intended to dispose of the case as so presented; he then summarized the material facts of his case in a new and separate offer of proof, and finally made a formal offer to prove all of the allegations of the complaint. With respect to the release which respondents introduced and pleaded as a complete defense to the action, the court in its control of the method of proof directed that such issue be covered first; whereupon appellant made an offer to prove that the signatures of the parties to the release were obtained through threats, menace, duress and fraud which consisted of statements and representations made to them in December, 1934, and in January, 1935, by attorney Raphael Dechter, to the following effect: that unless it was signed, respondents would cause an order to show cause to be issued by the federal court to Katie M. Eustace, citing her for contempt of court for perjury and would send her to jail for such contempt; that they would cause appellant's assignor, John M. Eustace, to be cited for contempt of court for changing the lock on the plumbing shop after the receiver took possession

thereof; that they would cause Katie M. Eustace and Charles W. Fourl (her attorney) to be cited for contempt of court for the removal of certain property from the receiver's possession and would cause said Katie M. Eustace and Charles W. Fourl to be confined at McNeil's Island for these acts and for obstructing justice; and that they would cause Katie M. Eustace and J. A. Griffith (the latter a bookkeeper for the plumbing business) to be sent to prison for conspiracy to obstruct justice by concealing said Griffith from service of a federal bench warrant.

Because of these threats and representations, appellant contended that he and his assignor were accordingly justified in rescinding the release. Appellant then offered to prove an actual rescission in that shortly after the execution of said release, he in his own behalf and in behalf of his father, John M. Eustace, notified respondents that the release had been secured through fraud, menace, duress and threats, and that he was cancelling the same; that neither he nor the other signers of the release would be bound by its terms; furthermore, that the signers through their attorneys had advised Dechter and the respondents that the release had been obtained through fraud and they would no longer be bound by it. Appellant further offered to prove that there was no valuable consideration passing to anyone for said release and that following its execution an order to show cause was procured from the federal court in bankruptcy ordering all creditors to show cause why the bankruptcy proceeding should not be dismissed, and that in pursuance thereof said proceeding was dismissed in March of 1935.

Following these offers of proof and argument of counsel, the court directed the jury to bring in a verdict in favor of respondents, on the ground that the decisions of the Supreme Court in *Garcia* v. *California Truck Co.*, 183 Cal. 767 [192 Pac. 708], and *Winstanley* v. *Ackerman*, 110 Cal. App. 641 [294 Pac. 449], were controlling, and that, as no notice of rescission or offer to restore had been given, as required under section 1691, of the Civil Code, appellant could not escape the effect of said release.

From the order directing the verdict and from the judgment entered pursuant thereto, this appeal is prosecuted.

Section 1691 of the Civil Code reads as follows:

"Rescission, how effected. Rescission, when not effected by consent, can be accomplished only by the use, on the part

of the party rescinding, of reasonable diligence to comply with the following rules:

"1. He must rescind promptly, upon discovering the facts which entitled him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind; and

"2. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

Appellant urges that (1) compliance with the terms of section 1691, *supra,* was not a prerequisite to commencement of the instant action; (2) that the release was illegal and void; (3) that where the offers of proof showed that threats were made to secure the release, it was error for the court to take the case from the jury; (4) that the release was for past acts only and did not relieve respondents of liability for acts committed subsequently; (5) the court erred (a) in disallowing the amendment to the complaint as to respondent L. A. Wagner, and (b) in excluding appellant's assignment of the cause of action and the certificate of fictitious name.

In connection with his first point, appellant contends that under the facts of his case no formal notice of rescission was necessary, and even in the event it was required, that he gave respondents sufficient notice thereof; further, that restoration or offer to restore benefits received was not a prerequisite to suit for the reason that nothing of value was received, therefore restoration was impossible.

The weakness of appellant's argument lies in the fact that although he offered to prove that the release in question was executed on January 29, 1935, and that the signers thereof gave oral notice of their election to rescind it "shortly after" its execution upon the ground it was procured through fraud and duress, he apparently lost sight of the fact that the dismissal was not effected until some time during the month of March, 1935, resulting in the plumbing business being restored to appellant's assignor by the receiver in bankruptcy on May 15, 1935. In other words, having given notice that he would not be bound by the terms of the release, as he claims, he remained passive for something like two months, and thereafter accepted all of the benefits accruing to him

through the dismissal of the bankruptcy matter and the restoration to him of the property held by the receiver.

As was so aptly stated in *Oppenheimer* v. *Clunie*, 142 Cal. 313 at 320 [75 Pac. 999], quoting from Pomeroy's Equity Jurisprudence: " 'The person who has been misled is required, as soon as he learns the truth, with all reasonable diligence to disaffirm the contract, or abandon the transaction, and give the other party an opportunity of rescinding it and of restoring both of them to their original position. He is not allowed to go on and derive all possible benefits from the transaction and then claim to be relieved from his own obligation by a rescission or a refusal to perform on his own part. If after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of and relief from the misrepresentations.' "

Again in *Blackburn* v. *McCoy*, 1 Cal. App. (2d) 648 at 658 [37 Pac. (2d) 153], the court quoting from *Schmidt* v. *Mesmer*, 116 Cal. 267 [48 Pac. 54], stated: " 'We do hold that where a party, with full knowledge of all the material facts, does an act which indicates his intention to stand to the contract, and waive all right of action for fraud, he cannot maintain an action for the original wrong. . . . Where the affirmance of the contract is equivalent to a ratification, all right of action is gone. . . . Nor are we unmindful of the settled rule that the defrauded party has an election of remedies. . . . We do decide that where a party, with full knowledge, declines to repudiate a transaction known to him to be fraudulent, and fully and expressly ratifies it, he can neither rescind nor maintain an action for damages.' "

From the foregoing, it would appear that the acceptance by appellant and his assignor of the benefits of the contract of release subsequent to the attempted rescission amounted to a waiver of the right to assert the invalidity of the release and constituted a ratification of its terms.

With respect to appellant's point that the court erred in refusing leave to amend the complaint by inserting therein the name of Lotta Wagner as a party defendant in the place of one Doe, it is shown by the testimony of appellant that he had known Lotta Wagner for fifteen years prior to the date of filing of said complaint, and that he gave as his reason for not naming her a defendant the fact that his attorney

had advised him he did not think he had a cause of action against her "due to the fact that she wasn't one of the creditors that closed the business up". Moreover, it is clear from the record not only that appellant was well acquainted with said Lotta Wagner, but that she was a defendant in an action for malicious prosecution brought by appellant's mother, Katie M. Eustace, as result of the bankruptcy proceeding herein referred to. In the circumstances, the refusal of the trial court of leave to amend the complaint did not constitute prejudicial error.

The attempted appeal from the order directing the verdict is dismissed. The judgment appealed from is affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 15, 1941.