[Civ. No. 27339. Second Dist., Div. One. Dec. 9, 1963.]

MAX BORAL et al., Plaintiffs and Appellants, v. WILLIAM M. CALDWELL et al., Defendants and Respondents.

Edgar A. Nathan for Plaintiffs and Appellants.

John R. Broderick for Defendants and Respondents.

LILLIE, J.—The instant action is for sums assertedly due under a guaranty of a lease; the faithful performance guaranteed by defendants was not more than $6,000. Plaintiffs were given judgment for $439 and costs; they have appealed. It is contended that the evidence does not support certain key findings of fact and, therefore, the conclusions of law drawn therefrom.

On June 15, 1960, by an instrument in writing, plaintiffs leased the subject premises to Crystalstone Corporation for a period of two years, commencing that same day. The lessee agreed to pay a total sum of $24,000, payable in installments as follows: $3,000 upon the execution of the lease and the sum of $1,000 per month commencing July 15, 1960, and continuing monthly thereafter on the 15th day of each month

for the next consecutive 20 months. The lease further provided that "In the event that Lessee shall not be in default under the terms of said Lease, at the end of the twenty-second (22nd) month of said lease Lessee shall be entitled to remain on the premises for the additional two (2) months without payment of rental." Two days later (June 17, 1960) defendants executed their limited guaranty agreement.

On January 12, 1961, the lessee was in default on the November and December installments of rent; current property taxes, another obligation of the lessee, remained unpaid. On that date plaintiffs caused to be served on the lessee and the defendants a "Notice of Termination of Lease" effective January 15, 1961, because of "failure to comply with the provisions of Paragraph 2," namely, payment of rent and taxes. The notice required the lessee to surrender possession of the premises "on or before the above mentioned date" (January 15).

The trial court found that the above notice constituted a termination of the lease, and in that connection further found that on or about January 15, 1961, plaintiffs entered into an oral agreement with Fiberglass Industries, Inc., to lease the same premises. The court also found that on the date of "termination" $2,439 was due and owing as and for rental and taxes; that against such amount defendants were entitled to a credit of $2,000, said sum representing a "security deposit" held by plaintiffs for the benefit of defendants and thus leaving a total unpaid balance of $439 admittedly owed by defendants.

The first finding challenged by plaintiffs relates to the trial court's determination that the lease was terminated. It is argued that the January 12 notice did not give the lessee, as required by law (Code Civ. Proc., § 1161, subd. 2), the alternative of paying the rental installments due.[1] It is additionally contended that no action was taken by the lessee after receipt of the notice, and hence its rights thereunder were waived by the tenant corporation. Cited as authority for

---

[1]The notice in question, prepared and signed by an attorney for plaintiffs, recites that the lessors "have elected to terminate said Lease as of January 15, 1961." Paragraph V of the complaint, after reference to the above notice, alleges that plaintiffs "elected to terminate said lease." Paragraph VI of the same pleading reads: "That at the time of the termination of the tenancy and lease of the lessees, [sic] and at the time the lessee vacated the premises, such premises were not otherwise able to be rented. . . ."

the above claim is *Grand Central Public Market, Inc.* v. *Kojima,* 11 Cal.App.2d 712 [54 P.2d 786], which holds that a lease is terminated '' 'only if the notice is acted upon by one of the parties.' '' (P. 717.) But the trial court also found, as noted earlier, that plaintiffs on or about January 15 entered into an oral agreement to lease the premises to another tenant. Implicit in such finding is the determination not only that the lessee had acted upon the notice, but also that it had effected a surrender or abandonment of the subject property.

In this latter connection, it has been declared that the issue of a surrender of the premises is properly before the court even if the words ''cancellation'' or ''termination'' (as here) are found in the pleadings, including the denials contained therein, rather than the word ''surrender.'' (*Rognier* v. *Harnett,* 45 Cal.App.2d 570, 575 [114 P.2d 654].)

'' 'A surrender of demised premises occurs only through the consent or agreement of the parties evidenced either by an express agreement or by an unequivocal act inconsistent with the terms of the lease and with the relation of landlord and tenant, or by acts so inconsistent with the terms of the lease as to imply in law an agreement to surrender, and hence, an acceptance by the landlord is requisite.' '' (*Martin* v. *Cassidy,* 149 Cal.App.2d 106, 111 [307 P.2d 981].) The case just cited also holds that '' 'Abandonment is a question of intention, to be determined only upon an investigation of all the facts and circumstances, and the trier of fact is ordinarily the exclusive judge of the existence of the elements thereof, *including the cardinal element of intention.*' '' (Italics added.) (P. 111.) The record reveals that ''since January 15 of 1961'' plaintiffs had listed the property with a broker. There was also evidence that at or about the time that notice of termination was served, Mr. Boral (one of the plaintiffs) was in touch with Mr. Barrie, one of the defendant-guarantors and also the president of Crystalstone—it appears that he executed the lease for the corporation in that capacity:

''Q. (By defendants' counsel) : Now, directing your attention to the month of January, 1961, and particularly to the last half, say, after the 12th or after the 15th, did you enter into negotiations with Mr. Lee and Mr. Barrie concerning these premises?

A. (By Boral) : Yes

Q. Isn't it true that these negotiations centered around a

proposed lease arrangement whereby they would lease the property from you for Fiberglass Industries, Inc. at a rental similar to that under the lease which is the subject of this lawsuit to Crystalstone?

A. Not quite.

Q. You had negotiations with them concerning a new lease, is that correct?

A. It wasn't a matter of a new lease. It was either a new lease or an amendment to an old lease whereby they would pay monthly installments for the old rental. . . .''

Additionally, it was stipulated that a Mr. Lee, if called as a witness, would have testified that he was an officer of Crystalstone Corporation and that Crystalstone ceased operations and abandoned the premises about January 1, or prior to January 1, 1961; that prior to February 10 of that year, all of its production equipment had been moved to another address.

We are of the view that the foregoing evidence is inconsistent with plaintiffs' claim that neither they nor their tenant interpreted the former's notice as a termination of the lease. Certainly it would be contrary to human nature and experience, as well as the usual propensities of men in the course of business (Code Civ. Proc., § 1960, subd. 2), for the parties to negotiate a reletting in the manner presently disclosed unless all concerned were of the opinion that the tenancy was at an end. An inference, adverse to plaintiffs' contentions, was properly deducible by the trial court which, as noted earlier, is ordinarily the exclusive judgment of the cardinal element of intention. Accordingly, it cannot be said as a matter of law that the questioned finding lacks substantial support. ■ True, plaintiffs requested (and were denied) specific findings (Code Civ. Proc., § 634) and they urge this as an additional assignment of error. However, the prohibition of the 1959 amendment does not change the basic rule on appeal that inferences which are favorable to the findings must be accepted as true. (*Mashon* v. *Haddock*, 190 Cal.App. 2d 151, 167 [11 Cal.Rptr. 865].) ■ Furthermore, this additional point is merely suggested by counsel; in the absence of adequate argument and authority, it must be disregarded.

■ Plaintiffs next challenge the finding that defendants were entitled to a credit of $2,000, being part of the total sum ($3,000) paid upon execution of the lease. As in a precedent decision, ''There is little or no dispute over the law

applicable to deposits made under a lease, the difficulty being in applying that law to the terms of a particular lease.'' (*Warming* v. *Shapiro*, 118 Cal.App.2d 72, 75 [257 P.2d 74].) ■ If a payment by the lessee upon execution of the lease is either an advance payment of rent or a bonus or consideration for the execution of the lease, such payment may be retained by the landlord. ■ If it is a deposit for security, it may be retained by the lessor only to the extent of the damages actually suffered. In *Warming*, which affirmed a judgment in favor of the lessor, the problem was made somewhat easier by the presence in the instrument of a provision that '' 'as part consideration for the making of this lease' the tenant has paid $12,988, $1,000 of which is for the first month's rent.'' (P. 76.) The decision cites other cases where express credits were given upon the latter months of the lease ''as a further consideration'' or ''as a consideration.'' ■ We do not have such unambiguous language here, although plaintiffs correctly point out that nowhere in the lease is the word ''security'' to be found — to that limited extent, defendants mistakenly rely on *Garfinkle* v. *Montgomery*, 113 Cal.App.2d 149, 157 [248 P.2d 52], where the instrument provided that lessee would pay the further sum of $1,350 '' 'as partial security for this agreement as hereinafter set forth.' ''

■ Although admitted for other purposes, there was evidence that Mr. Boral had on other occasions negotiated with other parties regarding a lease of the subject premises. Questioned about one such transaction, the following occurred:

''Q. (By defendants' counsel): Did you demand security from the upholstery company?

A. Yes.

Q. What type of security did you demand from them?

A. Six months.

Q. In other words, you in effect, have refused to rent it to anyone without a deposit of six months in advance as to security?

A. Or financial stability to whereby the company would be responsible.''

No motion either to strike the above testimony or limit it to the specific purpose intended was ever made. Failure to do so leaves the quoted declarations in evidence for all purposes. Had such steps been taken, its admissibility might be questionable. (Cf. *Lande* v. *Southern Calif. Freight Lines*, 85

Cal.App.2d 416, 422 [193 P.2d 144].) ▮ But, as stated in *Firlotte* v. *Jessee*, 76 Cal.App.2d 207, 211 [172 P.2d 710], quoting from Wigmore on Evidence, " 'While, ordinarily, evidence that a certain contract was made with A, is not admissible to show that a similar contract was made with B, it has repeatedly been held that such evidence may, in the discretion of the court, be allowed, where the circumstances indicate a strong probability that the course followed in one instance would be followed in others.' " ▮ The agreement at bar not being free from ambiguity, the trial court could (and presumably did) apply the above rule to the above circumstances. Its interpretation is by no means unreasonable in the light of the record and hence is not subject to appellate interference. Since the fund is properly construable as a security for deposit and since we have already determined that the lease was terminated and a legal surrender of the premises effected, the following statement of the law is controlling: " 'The lease contract being terminated, the lessee has a right to the fund, less any amount that may be due and unpaid on account of rental. A right to have the deposited sum returned to him, accrues in the event of a surrender of the premises and acceptance by the lessor.' " (*Ace Realty Co.* v. *Friedman*, 106 Cal.App.2d 805, 813 [236 P.2d 174].)

▮ The lease contained a provision (and the complaint so alleged) that plaintiffs upon termination of the lease would be entitled to recover from the lessee the excess, if any, of the amount of rent and charges reserved in the lease for the balance of the term over the then reasonable rental value of the premises for the same period (Civ. Code, § 3308). Plaintiffs, upon the trial, invoked this additional remedy despite the fact that their exercise of such right might well have excluded recourse "to any other remedy for rental or charges. . . ." (§ 3308, *supra*). ▮ Be that as it may, the trial court found that the reasonable rental value of the subject premises on January 15, 1961, and at all times subsequent thereto was $1,000 per month plus taxes, and plaintiffs now attack the sufficiency of the evidence to support such finding. ▮ Plaintiffs, of course, could recover under section 3308 only if the reasonable rental value in question was less than the rental of $1,000 plus taxes specified in the lease. ▮ There was evidence that following the termination plaintiffs endeavored to lease the property to Fiberglass Industries for $1,000 per month. Again, in April of

1961 the premises were listed for lease with a real estate broker at a rental of $1,300 per month. It is settled, needless to say, that a property owner is competent to testify as to the value of his own property. (*Burns* v. *Osborne-Fitzpatrick Finance Co.*, 101 Cal.App. 680, 682 [282 P. 419]. The weight of the above testimony, and that of contrary evidence produced by plaintiffs, was for the trial court. Clearly, therefore, this last contention of plaintiffs cannot be sustained.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 6, 1964.