[Civ. No. 8034. Fourth Dist., Div. Two. Nov. 9, 1966.]

PAUL LEITER, Plaintiff and Appellant, v. GEORGE M. ELTINGE et al., Defendants and Respondents.

Rutan & Tucker, Garvin F. Shallenberger, William B. Harmon and Peter V. Shackter for Plaintiff and Appellant.

Hubert Maiden, Selvin, Cohen & Rosen, Paul P. Selvin and Orlan S. Friedman for Defendants and Respondents.

McCABE, P. J.—Appeal from a judgment entered in favor of defendants upon granting of the motion made pursuant to section 631.8, Code of Civil Procedure, in an action seeking specific performance of a land sale contract and damages for breach of contract.

At least during the month of July 1963 there was an escrow on the same real property here involved wherein Eltinge was the buyer and Tidewater Oil was the seller. The escrow instructions in the Tidewater-Eltinge transaction were not before the court. When the escrow was entered into does not appear. There was testimony the Tidewater-Eltinge escrow had a closing date of July 31 or August 1, 1963.

On July 19, 1963, Tidewater forwarded a deed to the escrow agent, which deed contained an incorrect description of the land. On July 25 Tidewater sent a letter to the escrow holder authorizing it to correct the legal description in the deed. Tidewater did not forward a new and different deed to the escrow holder. The escrow holder in the Eltinge-Tidewater escrow was

the same as in the Leiter-Eltinge escrow. Eltinge did not obtain title to the property in question in the present litigation before July 31, 1963.

The plaintiff (hereinafter referred to as "Leiter") was the vendee under a land sale contract entered into with the defendant vendors, Eltinge, Graziadio, and Eltinge and Graziadio Development Co., a partnership (hereinafter referred to collectively as "Eltinge"). Plaintiff thereafter contracted to sell the real property, which was the subject of the Eltinge-Leiter agreement, to the remaining defendants, S. V. Hunsaker & Sons (hereinafter referred to as "Hunsaker").

In February 1963 plaintiff Leiter entered into an agreement with defendant Eltinge for the purchase of approximately 47 acres of land. Pursuant to their understanding, and on February 20, 1963, the parties opened an escrow (No. 49132-E) with Security Title Insurance Company in Santa Ana. The agreed purchase price was $866,540 or $18,500 per acre, with an initial deposit of some $2,000 to open the escrow. Among the provisions of the escrow agreement which are pertinent to the present controversy are the following: "The parties expect to complete this escrow on or before May 25, 1963; however, the buyer may extend the time limit for closing escrow to June 25, 1963, by releasing prior to May 25, 1963, an additional $5,000.00 to the seller; and then may extend the escrow to July 25, 1963, by releasing prior to June 25, 1963, another or additional $5,000.00 to the seller. In no event shall the closing of escrow extend beyond July 25, 1963. All funds released to seller shall apply on purchase price and shall be retained by seller."

The foregoing provision was typed on the *first* page of the escrow instructions. A second printed provision appeared on the reverse or *second* page of these instructions, as follows: "All disbursements are to be made by check of SECURITY TITLE INSURANCE COMPANY. You have (see reverse) days within which to comply with these instructions and additional time as may be required provided written demand to cancel by any party is not handed you after the time given to comply. Filing in public offices of any documents herein called for may preclude cancellation by less than all the parties hereto."

Subsequently, by making the required deposits and releases of the thus deposited sums to Eltinge, Leiter extended the closing date of the escrow to July 25, 1963. There is no reference in the Leiter-Eltinge escrow instructions to the Eltinge-Tidewater escrow or transaction.

Plaintiff Leiter admittedly was without the financial resources to pay the balance of the purchase price to Eltinge. After fruitless negotiations with several parties, he finally agreed to dispose of the property to Hunsaker for $21,000 an acre or a total purchase price of $973,510. To effectuate this agreement an escrow was opened by the parties on July 16, 1963, at Title Insurance and Trust Company. The escrow instructions provided: "This escrow shall be contingent on Escrow No. 49132-E, Security Title Company, Santa Ana, Don Stewart (Officer). Funds will be transferred from this escrow to Security Title Company in an amount sufficient to close that escrow. . . .

"Time is of the essence of these instructions. If this escrow is not in condition to close by July 22, 1963,[1] any party who then shall have fully complied with his instructions may, in writing, demand the return of his money and/or property; but if none have complied, no demand for return thereof shall be recognized until five days after the escrow holder shall have mailed copies of such demand to all other parties at their respective addresses shown in the escrow instructions. If no such demand is made, close this escrow as soon as possible."

Thus, by the terms of the escrow, it was to close before the designated closing date of the Leiter-Eltinge escrow. On the same date, Security Title Insurance Company forwarded a request for funds together with the legal description of the property to the Leiter-Hunsaker escrow at Title Insurance and Trust Company.

At no time, on or prior to July 24, 1963, did plaintiff Leiter deposit a deed to the property in the Leiter-Hunsaker escrow. On the other hand, on or prior to July 24, 1963, Hunsaker was unable to deposit the required purchase monies, but after obtaining a loan commitment on July 25, 1963, made the required deposit of $972,510 on July 30, 1963. On July 30 Leiter deposited a deed to Hunsaker in the Leiter-Hunsaker escrow.

During the interim, on July 25, 1963, Eltinge, upon learning Leiter would be unable to deposit the agreed purchase payment into the Eltinge-Leiter escrow, arranged to obtain financing elsewhere to insure performance under the terms of the Tidewater-Eltinge escrow. Simultaneously, Eltinge, by telegram, sent a notice of cancellation to the escrow holder, Security Title Insurance Company, terminating the Eltinge-Leiter

---

[1]At trial the date inserted as a date certain for the closing of this latter escrow was determined to be inserted in error by a clerk typist. The parties at trial agreed the actual date of closing was to have been July 24. 1963.

escrow if the purchase money and the vendee's deed were not deposited by 9 a.m. on July 26, 1963. Thereafter, and on July 31, 1963, by means of the alternative financing, Eltinge obtained title to the property.

On July 30, 1963, Title Insurance (Leiter-Hunsaker transaction) forwarded $973,510 to Security Title Insurance Company (Leiter-Eltinge transaction) pursuant to the previously mentioned request. Since the Eltinge-Leiter escrow had been cancelled effective July 26, 1963, at 9 a.m., Security Title Insurance Company, on demand, ultimately returned the funds to Hunsaker via the escrow agent. At trial, Eltinge's broker testified he first informed Eltinge of the Leiter-Hunsaker sale and sale price on July 19th or 20th and again on July 24th or 26th. He also informed Eltinge that Hunsaker had a loan commitment, but would be unable to make the purchase-money deposit on the agreed date.

Plaintiff Leiter appeals from an adverse determination of his claim for specific performance of the land sale contract with Eltinge and for damages in the sum of $120,000 against Eltinge or Hunsaker jointly and in the alternative. The Leiter specific performance action against Hunsaker was dismissed during trial.

In summarization of the numerous assignments of error, in essence, plaintiff contends the escrow instructions between Eltinge and plaintiff Leiter constituted the entire agreement of the parties, and in that agreement, time was not made of the essence, hence plaintiff's performance thereunder is timely and he is entitled to specific performance of this contract. Plaintiff Leiter further recognizes his contention is contrary to the finding of the trial court that time was of the essence to the contract. Also, plaintiff asserts: even if he was in default he is still entitled to specific performance by virtue of section 3275, Civil Code. He asks for money damages if specific performance by Eltinge is no longer possible.

Alternatively, plaintiff Leiter contends he was not in default in the Leiter-Hunsaker escrow for that agreement expressly provided Hunsaker must deposit the purchase money to close the Leiter-Eltinge escrow as a *condition precedent* to the duty of Leiter to convey to Hunsaker.

Defendants respond generally to plaintiff's assertions, negativing each in turn.

The findings of the trial court were made after a motion for judgment under Code of Civil Procedure, section 631.8 was granted. Since the trial court had the opportunity to

weigh the evidence presented, the court's findings and judgment may be accorded the same weight as though they had been made after a trial in which evidence was presented in support of all parties. (*Weinstock* v. *L. A. Carpet, Inc.*, 234 Cal.App.2d 809, 811 [44 Cal.Rptr. 852]; *Columbia Engineering Co.* v. *Joiner*, 231 Cal.App.2d 837, 842 [42 Cal.Rptr. 241]; *Estate of Sharff*, 219 Cal.App.2d 128, 132 [33 Cal.Rptr. 52].)

█ The following is then the appropriate rule on appeal where the findings are negative in form: ". . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court . . . " (*Callahan* v. *Gray*, 44 Cal.2d 107, 111 [279 P.2d 963]; *Greening* v. *General Air Conditioning Corp.*, 233 Cal.App.2d 545, 551 [43 Cal.Rptr. 662]; Witkin, Cal. Procedure (1954), Appeal, § 88, pp. 2251, 2252.) From this legal plateau, we review the findings of the trial court which are at issue:

"V. On or about February 15, 1963, plaintiff Leiter and defendant Eltinge entered into a letter-agreement concerning the purchase and sale of approximately forty-seven acres of land situated in the City of Brea . . .

"VII. The Eltinge-Leiter Escrow Agreement provides in part as follows:

"(2) A correct legal description of the property sold and an engineer's calculation of the exact acreage was to be delivered to the escrow, and were to be approved by buyer and seller.

"(5) The escrow agreement was not to extend beyond July 25, 1963, said agreement expressly providing: 'In no event shall the closing of escrow extend beyond July 25, 1963.'

"VIII. Prior to entering into the Eltinge-Leiter Escrow Agreement, and at all times thereafter during the course of the transaction between plaintiff Leiter and defendants Eltinge and Graziadio, plaintiff was informed and had knowledge of and expressly agreed to the following:

"(1) Defendants Eltinge and Graziadio were acquiring title to the subject property from Tidewater Oil Co., hereinafter referred to as 'Tidewater,' under a purchase and sale agreement with said Oil Company.

"(4) It was necessary for plaintiff Leiter to pay the purchase price for the land to defendants Eltinge and Graziadio to enable them to use such funds to acquire the land from Tidewater.

"(5) If plaintiff Leiter did not pay the purchase price for

said land by July 25, 1963, defendants Eltinge and Graziadio would be compelled to obtain from another source the funds necessary to complete the transaction with Tidewater.

"XIV. There was no bad faith on the part of defendants Eltinge and Graziadio in regard to the Eltinge-Leiter transaction.

"XXVII. The Eltinge-Leiter Escrow Agreement provided in part that: 'In no event shall the closing of escrow extend beyond July 25, 1963.' Said agreement, by its terms, expressly made time of the essence in the sale by Eltinge and Graziadio to plaintiff Leiter.

"XXXVIII. Neither plaintiff Leiter nor plaintiff's nominee, Leitco, performed all of the terms and conditions of the Eltinge-Leiter transaction.

"XL. Neither plaintiff Leiter nor plaintiff's nominee, Leitco, performed all of the terms and conditions of the Leiter-Hunsaker transaction on the part of the seller to be performed.

"XLIII. Neither plaintiff nor plaintiff's nominee, Leitco, was entitled to rely on the transfer of funds from the Leiter-Hunsaker escrow to close the Eltinge-Leiter escrow. Plaintiff and plaintiff's said nominee were required to deposit the purchase price in the Eltinge-Leiter escrow on or before July 25, 1963, whether or not the funds were transferred from the Leiter-Hunsaker escrow prior to said date of July 25th.

"XLVII. No act or failure to act on the part of defendant S. V. Hunsaker & Sons in regard to the Leiter-Hunsaker escrow transaction constituted a default under or a breach of contract in regard to the Leiter-Hunsaker escrow agreement."

Patently, Findings XXVII, XXXVIII, XL and XLVII consisted, at least in part, of conclusions of law. Further, plaintiff filed objections to each of the quoted findings. Since these findings were not, as is often the case of findings on a motion under section 631.8 of the Code of Civil Procedure, negative in form, the trial court's findings upon the granting of the motion are entitled to the same respect on appeal as are any other findings. (*Greening* v. *General Air Conditioning Corp.*, supra, 233 Cal.App.2d 545, 550; *Woolliscroft* v. *Starr*, 225 Cal.App.2d 667, 669-670 [37 Cal.Rptr. 570].) That is, an appellate court cannot substitute its judgment on the facts for that of the trial court if the findings of the trial court are supported by any competent and substantial evidence properly in the record. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689]; *Berniker* v. *Berniker*, 30 Cal.2d 439,

444 [182 P.2d 557].) ▮ But the filing of the objections and requests for special findings to the findings in the event the trial court did not make findings on all facts necessary to support the judgment, or if the findings are ambiguous or conflicting, precludes an appellate court from drawing inferences favorable to the prevailing party on such issues attacked by the requests for special findings. (Code Civ. Proc., § 634; *Boral* v. *Caldwell*, 223 Cal.App.2d 157, 163 [35 Cal.Rptr. 689].)

Plaintiff's objections to Findings V, VII and VIII on the ground that they are not supported by any evidence, and his contention that the entire land sale contract was set out in the escrow instructions, are overcome by reference to the aforementioned rule.

▮ " 'The use of an escrow is simply a customary and convenient method of carrying out an agreement of sale. It does not supplant the basic agreement although they may be read together to ascertain intent.' " (*Wolf* v. *Price,* 244 Cal. App.2d 165, 171 [52 Cal.Rptr. 889], quoting *King* v. *Stanley,* 32 Cal.2d 584, 589 [197 P.2d 321], and the cases therein cited.) ▮ Escrow instructions do not supplant the actual agreement of sale but instead surmount the barrier of the statute of frauds by constituting a written memorandum of that basic agreement. (*Wolf* v. *Price, supra,* p. 172.)

▮ "Once the statute of frauds is satisfied, there is no compelling reason why the actual agreement may not be proved in part by oral evidence. The only elements of the contract required by the statute to be written are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified." (*Wolf* v. *Price, supra.*)

The record is replete with competent and substantial evidence to sustain Findings V, VII and VIII.

Since determination of this latter issue resolves the terms of the agreement, the nub of the entire controversy—whether or not time was of the essence in the performance of the agreement—is now dispositive of the balance of the controversy as to defendant Eltinge.

For the proper determination of this issue, Professor Corbin, in his work, Corbin on Contracts (1960, vol. 3A, § 716, pp. 367, 369), has promulgated the following test: "The reason that payment or conveyance at the exact time [set for performance] is not 'of the essence,' even though delay will be a breach of contract and a cause of action, is that the injury

caused by delay is little or nothing. Delays are frequent in these transactions; and it is the custom of men to overlook them, even though they may have stated in advance that they would not. The reason can also be stated in this form: performance at a time later than that specified in the contract is 'substantial performance.' '' ■ Whereas, in the instant case the delay, which is a breach of the parties' contract, would have caused the defendants in the Eltinge group substantial harm, for unless plaintiff tendered timely payment, as the trial court expressly found, Eltinge would be unable to complete his purchase of the subject property in the Eltinge-Tidewater escrow. The court also found that plaintiff Leiter had also expressly agreed ''it was necessary for plaintiff Leiter to pay the purchase price . . . to defendants . . . to enable them to use such funds to acquire the land from Tidewater.'' .

These conditions existing, the rule of *Katemis* v. *Westerlind*, 120 Cal.App.2d 537, 543 [261 P.2d 553], does not apply, though ''time is not of the essence unless it has been made so by its express terms or is necessarily so from the nature of the contract.'' Here, the payment was agreed to be necessarily precedent to Eltinge's duty to convey title as he could not otherwise acquire title to the property.

■ Nor is plaintiff entitled to relief under Civil Code, section 3275, if time is of the essence to the contract. (*Federal Farm Mortgage Corp.* v. *Davis* (9th Cir. 1942) 132 F.2d 663; *Gattian* v. *Coleman*, 86 Cal.App.2d 266, 268-269 [194 P.2d 728].)

■ The escrow holder in a transaction involving the sale of real property is ''at first the agent of *both* parties'' (org. emp.), 2 Witkin, Summary of Cal. Law (1960) Real Property, § 60, p. 914; and this status as dual agent continues at all times prior to the performance of the conditions of the escrow. (*Spaziani* v. *Millar*, 215 Cal.App.2d 667, 682 [30 Cal.Rptr. 658]; *Borzonovo* v. *Henderson*, 182 Cal.App.2d 220, 226-227 [6 Cal.Rptr. 236]; *Todd* v. *Vestermark*, 145 Cal.App.2d 374, 377 [302 P.2d 347].)

Thus, the notice to the escrow agent by defendant Eltinge gave notice to plaintiff Leiter that defendant Eltinge had exercised his legal right to cancel the escrow. From July 26, 1963, plaintiff Eltinge had no legal basis for believing or contending the fruits of the Leiter-Eltinge transaction were available to him. From July 26, 1963, and after having received the notice,

plaintiff. Leiter did not seek, nor was there an extension of time granted to him in which to perform.

. The liability of Hunsaker was contingent upon the nature of the duty to tender payment either prior to or concurrently with the deposit of a valid conveyance into the escrow by the plaintiff. Ordinarily the delivery of the deed and the payment of the purchase price are concurrent and dependent conditions. (*Weisberg* v. *Ashcraft,* 223 Cal.App.2d 793, 795 [36 Cal.Rptr. 188] ; *Groobman* v. *Kirk,* 159 Cal.App.2d 117 [323 P.2d 867] ; *Katemis* v. *Westerlind, supra,* 120 Cal.App.2d 537, 545; *Lifton* v. *Harshman,* 80 Cal.App.2d 422, 432-433 [182 P.2d 222].)

Plaintiff asserts this general rule is inapplicable because the Leiter-Hunsaker escrow instructions by its express terms provided this escrow was ''contingent on Escrow No. 49132-E'' [the Eltinge-Leiter escrow], and that funds from the former escrow were to be transferred to the latter; therefore, he concludes Hunsaker's payment of the purchase price is a condition precedent to his performance under their agreement, citing *Patty* v. *Berryman,* 95 Cal.App.2d 159 [212 P.2d 937]. However, that case involved the sale of personal property out- · side of an escrow in which the payment of the purchase price was determined to be a condition precedent to the delivery of the goods. Despite the phrase in the escrow instructions ''funds will be transferred from this escrow to Security Title Insurance Company'' if Title Insurance and Trust Company had done so before plaintiff had deposited a valid conveyance in the Title Insurance escrow, it would have made the transfer in violation of its fiduciary duty to Hunsaker. The other portion of the agreement, urged by plaintiff, that this escrow is ''contingent on Escrow No. 49132-E,'' adds weight to this conclusion for it logically follows from this portion that plaintiff's duty of performance was not absolute, but was, instead, contingent upon his acquiring title through the Eltinge-Leiter escrow.

. Since plaintiff's duty to perform arose only if he acquired title through the Eltinge-Leiter escrow, Hunsaker's duty to deposit the agreed-upon purchase price never became absolute.

Under plaintiff's postulation, however, Hunsaker's duty was precedent to plaintiff's obligation to tender valid title to the subject matter of the land sale contract. This contention flies in the face of the language of the escrow instructions and fails to consider the fact that at the time set for performance

plaintiff did not have title to the property in question, nor did he cancel the escrow or otherwise indicate he was no longer willing to abide by the parties' agreement even though the time set for performance had already passed. ■ Ordinarily a vendor need not have any title at the time he contracts to sell real property, if, at the time set for performance, he is able to furnish the title he agreed to convey. (*Wheat* v. *Thomas,* 209 Cal. 306, 315-316 [287 P. 102] ; *Darr* v. *Clevelin Realty Corp.,* 33 Cal.App.2d 500 [92 P.2d 475] ; *Jedlicka* v. *Atwell Land Co.,* 93 Cal.App. 455, 464 [269 P. 665, 270 P. 232] ; *Wolleson* v. *Coburn,* 63 Cal.App. 315, 324 [218 P. 479].) In the present case plaintiff did not have title at the time set for performance, nor did he have title at any time. While delay in prompt performance, if time is expressly of the essence in a contract, is a material failure of consideration (Rest., Contracts, § 276 ; *Becker* v. *Becker,* 36 Cal.2d 324, 326-327 [223 P.2d 479] ; *Henck* v. *Lake Hemet Water Co.,* 9 Cal.2d 136, 143 [69 P.2d 849] ; *Jozovich* v. *Central Cal. Berry Growers Assn.,* 183 Cal. App.2d 216, 227 [6 Cal.Rptr. 617] ; *Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 251 [270 P.2d 563] ; *Katemis* v. *Westerlind, supra,* at p. 543), defendant's duty to perform is excused where it appears plaintiff will not be able to render his performance at the agreed-upon time due to impossibility, insolvency, manifest inability to perform, or similar cause. (Rest., Contracts, §§ 280-288 ; *Bliss* v. *California Coop. Producers,* 30 Cal.2d 240, 248, 250 [181 P.2d 369, 170 A.L.R. 1009] ; *Ogren* v. *Inner Harbor Land Co.,* 83 Cal.App. 197 [256 P. 607].)

■ *Arguendo,* even though defendant Hunsaker's conduct might have been violative of the covenant providing time was of the essence to the contract, plaintiff by his conduct did not elect to hold him liable for that breach. Herein, the plaintiff, by his failure to give a timely notice of cancellation of the escrow (the Leither-Hunsaker escrow), and his subsequent conduct in accepting the late tender of performance by Hunsaker, indicated an election to affirm the contract. (*Mayer* v. *Northwood Textile Mills, Inc.,* 105 Cal.App.2d 406, 409-410 [233 P.2d 657] ; *Panno* v. *Russo,* 82 Cal.App.2d 408, 411-412 [186 P.2d 452] ; *Eustace* v. *Lynch,* 43 Cal.App.2d 486, 491 [111 P.2d 372].) This conduct, treating the contract as binding after full knowledge of the breach, is a waiver of the right to rescind the contract for the material breach. (*LeClerq* v. *Michael,* 88 Cal.App.2d 700 [199 P.2d 343].) Since plaintiff elected to treat the contract as still alive and viable and accepted further performance from defendant Hunsaker, the

rule is well-established he waived the right to hold defendant Hunsaker for damages for the breach. (*Kern Sunset Oil Co.* v. *Good Roads Oil Co.*, 214 Cal. 435, 440 [6 P.2d 71, 80 A.L.R. 453]; *Boone* v. *Templeman*, 158 Cal. 290, 294-295 [110 P. 947, 139 Am.St. Rep. 126]; *Bodem* v. *Friedman*, 90 Cal.App.2d 225, 228 [202 P.2d 632].)

Judgment affirmed.

Kerrigan, J., concurred.

A petition for a rehearing was denied December 6, 1966.