[Civ. No. 24037. Second Dist., Div. One. Feb. 9, 1960.]

LOS ANGELES CITY SCHOOL DISTRICT OF LOS ANGELES COUNTY et al., Respondents, v. LANDIER INVESTMENT COMPANY (a Corporation) et al., Appellants.

746

Kasch & Cook and Leo N. Cook for Appellants.

Harold W. Kennedy, County Counsel, William E. Lamoreaux and Clarence H. Langstaff, Assistant County Counsel, and Jerry F. Halverson, Deputy County Counsel, for Respondents.

LILLIE, J.—The present proceeding grew out of various contracts entered into during the years 1948 and 1950, between the plaintiffs and defendant Landier Management Company, for the transportation of the pupils of plaintiff school districts. Within a year following the letting of the last contract, it was represented to the plaintiffs that three members of their governing board had an interest contrary to law in the subject of certain of the aforesaid agreements. Accordingly, in November of 1951, plaintiffs filed an action for declaratory relief wherein the asserted interest was set forth and wherefore it was prayed that the contracts in question be declared void ad initio and they recover the entire sum paid out thereunder, amounting to $1,548,852.74. The Landier defendants appeared by way of answer, which included a denial that the three members' participation in the several transactions constituted an ''interest'' proscribed by California statutes. Much of the then pertinent law is discussed in *People* v. *Becker* (1952), 112 Cal.App.2d 324 [246 P.2d 103], and *People* v. *Elliott* (1953), 115 Cal.App.2d 410 [252 P.2d 661], which sustained the removal from office of two board members mentioned in the complaint for declaratory relief.

The action was noticed for trial on May 27, 1952, and thereafter continued from time to time; finally, on March 18,

1954, trial was set for August 17, 1954. Meantime, in the early part of 1953, negotiations for settlement were in progress between plaintiffs' counsel and separate counsel for Landier Investment Company and F. P. Landier (appellants herein), and the other Landier defendants respectively. These negotiations are reflected by certain correspondence which was considered by the court below and which has been made a part of the record on appeal. One proposed settlement formula would have involved payment to plaintiffs of the excess profits (approximating $123,000) over and above those profits considered to be fair and reasonable by a board of experts. This proposal was rejected, as it did not constitute a return of all profits realized under the contracts; and it was stated by plaintiffs' counsel that ''unless a far more substantial settlement is made, the public policy would appear . . . to require the Courts . . . to decide what amount the School Districts should recover.'' Thereafter, by letter dated June 22, 1954, the attorney for Mr. Landier and Landier Investment offered to pay the sum of $264,776.86 in yearly installments of $33,097.11 without interest on principal or installments, and declared that ''the amount of the judgment, if the plaintiffs were successful . . . would necessarily be the amount prayed for . . . or over $1,000,000.00,'' and would compel the institution of bankruptcy proceedings to obtain relief therefrom. Negotiations for settlement continued. As a result, by letter dated July 7, 1954, plaintiffs' counsel sought approval by plaintiffs' governing board of ''a formal offer (from defendants) to settle this litigation as to all of the defendants.'' Under a proposed stipulation contemplated thereunder and to be executed by all parties, defendants F. L. Landier and Landier Investment Company would pay the total sum of $264,776.86, without interest upon principal or any installments, in the following manner: one-eighth thereof, or $33,097.11, on the twentieth day of October of each year, commencing October 20, 1955, until the whole amount was paid, the action then to be dismissed as to the other defendants. Included in the stipulation would also be a provision that in the event of default in any payment for a period of 30 days, after 30-day notice of such default, without further notice, judgment could be entered against defendants F. P. Landier and Landier Investment for twice the unpaid balance. Acceptance of the offer was recommended by plaintiffs' counsel to their governing board for the following reasons: ''1. It is substantial, exceeding one quarter of a million dollars. 2. It provides an economic sanction for

failure to meet the payments. 3. It would pay to the School Districts all profits which have been made under the four contracts. The settlement would therefore remove all profit from these contracts.''

As to the possibility of defendants' relief from their obligation by way of discharge in bankruptcy, the letter declared that ''it seems to us that those possibilities are as well covered in this settlement as they can be in business transactions of this sort,'' adding: ''(t)he threat of a judgment in the amount of twice the unpaid balance due on the settlement is just about as potent an economic weapon as the Board could have to enforce payment of the full amount provided by the settlement.'' Counsel for defendants gave written approval of this letter which ''constitutes an accurate statement of the offer to settle the subject litigation which is hereby confirmed by Mr. F. P. Landier and Landier Investment Co.'' On August 17, 1954, a ''Stipulation for Settlement'' was executed by a representative of plaintiffs' governing board, defendant Landier (for himself and Landier Investment) and the attorneys for all parties concerned, and thereafter filed with the court; subsequently the action was dismissed as to defendants Landier Management and Landier Transit and marked ''off calendar'' as to F. P. Landier and Landier Investment.

Three payments, totalling $99,291.33, were subsequently made. In June of 1958 defendants substituted present counsel as their attorneys; and thereafter, on July 30, 1958, they noticed a motion to be relieved of the ''Stipulation for Settlement'' executed by them and filed with the lower court almost four years previously. Contending that its provisions constituted a penalty with no relation to any damage sustained (Civ. Code, § 1670), defendants prayed that paragraph three of the Stipulation be modified to provide that in the event of default, judgment be entered for the balance due and unpaid, not for twice the unpaid balance due as therein provided, and that the payments theretofore made be adjudged a reasonable and fair settlement of the litigation; and that the action accordingly be dismissed with prejudice to them. The motion was denied; and on November 5, 1958 (appellants concededly then being in default), on ex parte application of respondents, judgment in the sum of $300,971.06, double the balance unpaid, was rendered for plaintiffs pursuant to the stipulation on the original complaint.

On this appeal from the judgment entered pursuant to respondents' ex parte application, appellants in effect ask this court to review the trial court's order denying their motion for relief from the stipulation by renewing the contentions made on their motion to the lower court that the double payment provision of the stipulation is penal in character and therefore unenforceable; and that subsequent amendments to the Education Code eliminated any legal objections to the contracts which were the subject of the action for declaratory relief. Although there appears to be merit to the first of these contentions, since "it is judicial action, and not judicial reasoning or argument, which is the subject of review" (*International etc. Workers* v. *Landowitz,* 20 Cal. 2d 418, 423 [126 P.2d 609]), we are of the opinion that the denial of the motion was proper in the light of procedural matters and principles hereinafter discussed.

■ Ordinarily a party may be relieved from a stipulation only upon timely application to the court wherein it was made, notice thereof first being given to the opposing party (46 Cal.Jur.2d, Stipulations, p. 46). ■ A hearing should then be had on affidavits and counteraffidavits (*Warburton* v. *Kieferle,* 135 Cal.App.2d 278, 286 [287 P.2d 1]), and the court, in the exercise of its sound discretion, may set aside a stipulation entered into through inadvertence, excusable neglect, fraud, mistake of fact or law, where the facts stipulated have changed or there has been a change in the underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce the stipulation (46 Cal.Jur.2d, *supra,* pp. 43-44). See also *Gonzalez* v. *Pacific Greyhound Lines,* 34 Cal.2d 749, 755 [214 P.2d 809]. In the case at bar, appellants properly complied with the requirement that the discretion and powers of the trial court to grant relief must first be invoked; but failed to file any supporting affidavit which would explain the lack of timeliness manifest on the face of the written motion. The competency of appellants' previous counsel is not challenged, nor is there any claim of misrepresentation; in short the memorandum of points and authorities accompanying the motion simply suggests that their execution of the stipulation was based on a mistake of law and other special circumstances, including an asserted change in the law governing the main action.

■ Appellants properly maintain that a stipulation is a contract (*Palmer* v. *City of Long Beach,* 33 Cal.2d 134,

142 [199 P.2d 952]) ; that being so, the rules for construction of contracts are said to govern (*Jackson* v. *Puget Sound Lumber Co.*, 123 Cal. 97, 100 [55 P. 788]). Hence, a person who seeks relief from the burdensome effects of a stipulation may be fully protected by enforcement of the stipulation in a reasonable and nonburdensome manner (1 Witkin, California Procedure, p. 70); it has also been said that where a party endeavors to nullify a stipulation entirely, it "is in effect an attempt to rescind the agreement" (1 Witkin, California Procedure, p. 70). Whether the stipulation be entirely void (as claimed by appellants) and their motion accordingly considered one to *cancel* such an instrument (*Sullivan* v. *Dunnigan*, 171 Cal.App.2d 662, 667-668 [341 P.2d 404]), or whether the stipulation was originally valid and the attack thereon in the nature of an attempt to *rescind* or to *reform* the agreement, it is settled that some degree of promptness is required in the assertion of such claims. Actions for cancellation, rescission and reformation on the ground of mistake ordinarily are controlled by section 338, subdivision 4, Code of Civil Procedure, which provides for a three-year limitation. From the standpoint of laches, whether a party has acted with promptness is a question of fact and depends on the circumstances of the particular case (12 Cal.Jur.2d, Contracts, p. 412; *Sullivan* v. *Dunnigan, supra*). As in other situations where a party seeks relief from the consequences of his own act, the discretion of the trial court is broad and unless clearly abused will not warrant appellate interference (*Moffitt* v. *Jordan*, 127 Cal. 628, 629 [60 P. 175]).

 In the early case bearing upon a similar problem, it was observed that "the court should require a stronger showing to justify relief from the effect of a mistake in law than in case of a mistake as to the matter of fact" (*Ward* v. *Clay*, 82 Cal. 502, 510 [23 P. 50, 227]); thus, it must be established that the mistake of law was mutual or arose from a misrepresentation of the law by one party of which the other was aware but did not rectify (Civ. Code, § 1578). As to the changes in the law which are said to control, the amendments to the Education Code, subsequently to be discussed, were enacted in 1955, some three years prior to the motion for relief; during that period the stipulation was acted upon by the parties and the agreement partly performed.

 These considerations, apart from any view taken of the formal grounds of the motion, might well have influenced

the trial court in its determination that an insufficient showing had been made and that it would be inequitable not to recognize the stipulation's binding effect (*Webster* v. *Webster*, 216 Cal. 485, 490-491 [14 P.2d 522]). Respondents were ready and apparently desirous of going to trial, and, it appears, had undergone certain expenses in the preparation therefor. The main contracts then being void as against public policy, respondents' right to recover sums paid thereunder can admit of no dispute (*Miller* v. *McKinnon*, 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570]; *County of Shasta* v. *Moody*, 90 Cal.App. 519 [265 P. 1032]; upon such a proceeding, appellants' rights would have been purely defensive in character. Mention must again be made of appellants' concession that the stipulation for settlement constituted a contract between the parties; therefore, their refusal to comply was tantamount to a breach thereof. By the terms of the instrument, they stipulated that in the event of such breach the court could, on application of the respondents, enter judgment in the stipulated amount. One who agrees to waive or forego a right is precluded from afterwards asserting that right (*Faye* v. *Feldman*, 128 Cal.App.2d 319, 328 [275 P.2d 121]).

Appellants bargained for and obtained an extension of time to meet the claims properly asserted by respondents; bankruptcy proceedings, then in the offing, were thereby averted. In these circumstances, it cannot be said that there was any abuse of discretion in denying relief from a stipulation voluntarily entered into under the advice of competent counsel.

Taking up the claim that the provision for double payment constitutes a penalty, paragraph III of the stipulation reads in pertinent part as follows: "Said defendants shall have thirty days' grace from and after the due date of any of said installments within which to pay such installments. In the event default occurs in the payment of any such installment and said default continues for thirty days after written notice of such default . . . a judgment in favor of the plaintiffs . . . and against said defendants Felicien P. Landier and Landier Investment Co. for twice the amount of the unpaid balance of said $264,776.86 shall be entered without further notice." Generally recognized is the principle that an agreement for the payment of a penalty is invalid; our statutory law and its interpretation in this state are in accord therewith. Thus, section 1670 of the Civil Code declares that a provision in a contract which provides for the amount of damages to be

paid in the event of a breach is void, except as expressly provided in section 1671: "(t)he parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." ▮ Whether or not it would be "impracticable or extremely difficult to fix" such actual damage is generally a question of fact in each instance (*Rice* v. *Schmid,* 18 Cal.2d 382, 385 [115 P.2d 498, 138 A.L.R. 589]), which must be resolved through an examination of the circumstances attendant on the making of the contract, as well as by an examination of the terms of the contract itself (*Better Food Mkts.* v. *American Dist. Tel. Co.,* 40 Cal.2d 179, 188 [253 P.2d 10, 42 A.L.R.2d 580]). ▮ Stated otherwise, whether a provision for the payment of a fixed sum is a valid stipulation for liquidated damages or an invalid stipulation for a penalty depends on the intent of the parties to the agreement (*Hanlon Drydock etc. Co.* v. *McNear,* 70 Cal.App. 204, 210-211 [232 P. 1002]).

▮ Indicative of such intent is the use by respondents' counsel of the terms "economic weapon" and "economic sanction" in the course of correspondence leading up to the stipulation—this letter, it will be recalled, was approved by appellants' then attorney as *"an accurate statement of the offer to settle the subject litigation."* (Emphasis added.) While the terminology used is not conclusive it is entitled to some weight (*Better Food Mkts.* v. *American Dist. Tel. Co., supra,* 40 Cal.2d 179, 187). Correspondence between the parties also discloses the statement by appellants' counsel, under date of June 22, 1954, that "(i)f a judgment is entered against F. P. Landier and Landier Investment Co., the amount of the judgment, if the plaintiffs were successful in said action, would *necessarily* be the amount prayed for in the complaint, or over $1,000,000.00." (Emphasis added.) The accuracy of this evaluation of the problem was never challenged; instead, we have in the case at bar, first, an agreement substituting (in a lesser sum) the amount of damages sustained for a certain and definite measure of damages fixed by decisional law (*Miller* v. *McKinnon, supra,* 20 Cal.2d 83, 88-89), and second, the inclusion therein of a provision calling for payment of certain monies in the event of nonpayment of the lesser sum. Assuming, despite *Miller* v. *McKinnon, supra,* that the original damages were not readily ascertainable, they certainly became ascertainable at the time of the execution of the stipulation;

754

hence, the provision for nonpayment of the lesser sum was a penalty bearing "no reasonable relation to the losses the parties considered might be sustained" (*Atkinson* v. *Pacific Fire Extinguisher Co.*, 40 Cal.2d 192, 197 [253 P.2d 18]). In *Freedman* v. *Rector, Warden & V. of St. Matthias Parish*, 37 Cal.2d 16, 22 [230 P.2d 629, 31 A.L.R.2d 1], it was said: "A penalty equal to the net benefits conferred by part performance bears no such (rational) relationship." While that case was concerned with forfeiture in a vendor-vendee situation and the facts indicating a penalty were much stronger, the general reasoning there adopted and the policy of the law against penalties are equally applicable here. Likewise untenable is respondents' further claim that the stipulation "is not a contract in the usual sense . . . (where) the parties are primarily concerned with obtaining goods or services." No authority is cited, and we know of none, which would exempt the agreement in question from controlling principles heretofore discussed. Before leaving this phase of the instant appeal, and in fairness to the lower court, the record does not reveal the ground for the denial of the relief herein sought; hence, we do not presume to state that the trial court did not entertain the same views, as does this court, respecting the matters just discussed.

▇▇▇▇ Appellants' second and final contention deals with certain additions to the Education Code following the filing of the complaint herein, it being claimed that such legislation eliminated respondents' right to proceed further thereon. In 1943, section 1011, Education Code, was enacted to provide that no member of the governing board of any school district shall be interested in any contract made by that board. In 1955, following the institution of the present suit for declaratory relief, sections 1011.1, 1011.2 and 1011.3 were adopted. They restrict the circumstances under which a contract may be voided when entered into by a board composed of a member who is "interested" therein. For example, section 1011.1 provides that no such contract is void or voidable under section 1011 if (a) the fact of such interest is disclosed or known to the governing board and thereafter ratified, *and* (b) the transaction is just and reasonable as to the school district. To give to the 1955 legislation, *supra,* the interpretation claimed by appellants would be to render the provisions thereof retroactive in their operation. ▇▇▇▇ There is nothing in the pertinent legislation to indicate that it was intended by our Legislature that the same shall have any such retroactive

effect; accordingly, the point is governed by the well-settled principle of statutory construction that a legislative enactment will not be construed to be retroactive in the absence of an express declaration to that effect or a very clear implication that such was the intent of the Legislature (*East Bay Municipal etc. Dist.* v. *Garrison,* 191 Cal. 680, 692 [218 P. 43], and cases cited). ▮▮▮ Also, assuming that the three members of the governing board were not "interested" under *present* law, there is no evidence that any of the four contracts were "just and reasonable" as to the respondents. Additionally, even when a statute has been declared unconstitutional, moneys voluntarily paid thereunder may not be recovered for mistake of law (*Campbell* v. *Rainey,* 127 Cal.App. 747 [16 P.2d 810])—here, of course, there was no compulsion. Appellants' reliance on *Fenton* v. *Markwell & Co.,* 11 Cal. App.2d Supp. 755 [52 P.2d 297] and *Ewell* v. *Daggs,* 108 U.S. 143 [2 S.Ct. 408, 27 L.Ed. 682], is misplaced. Both cases dealt with repeals of usury laws. As stated in *Fenton* v. *Markwell & Co., supra,* page 764: "While the general rule is that if a contract is void by the law in force at the time it is made, the subsequent repeal of the law will not validate such contract, statutes changing the law relating to usury are an exception to this rule" (Citing *Ewell* v. *Daggs, supra*).

For the foregoing reasons, the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 6, 1960. Schauer, J., Spence, J., and Peters, J., were of the opinion that the petition should be granted.