238

[Civ. No. 26646.   Second Dist., Div. Four.   Apr. 18, 1963.]

LOUIS McKINNEY MYERS, Plaintiff and Appellant, v. RALPH EDWARD CARTER et al., Defendants and Respondents.

Milton Fenton for Plaintiff and Appellant.

Kirtland & Packard, Randolph E. Siple, William B. Rodiger and R. Wayne Walker for Defendants and Respondents.

KINGSLEY, J.—Plaintiff appeals from a judgment in favor of defendants in an action for personal injuries. While plaintiff, a man of limited education, was a passenger in a taxicab owned by defendant Yellow Cab Company and driven by defendant Hanna, the cab was involved in a collision with an automobile driven by defendant Carter. In addition to other defenses, defendants duly pleaded a release executed by plaintiff. Pursuant to section 597 of the Code of Civil Procedure, the issue of the validity of the release was tried first and, by stipulation, without a jury. The trial court made findings in favor of the defendants and entered judgment in their favor. This appeal followed.

The collision occurred at about 1:30 in the morning of Saturday, March 9, 1957. Plaintiff was taken to a hospital where sutures were applied to a cut on his head and he was released. On Monday, March 11, 1957, two days after the accident and before plaintiff had returned to the hospital for further treatment, he was visited at his place of employment by James M. McCarthy, a claims adjuster for the defendant cab company. After a discussion for a period of thirty to forty minutes, plaintiff agreed to accept the sum of $150 in settlement of his claims and executed a release.

I

As pleaded, and as offered in evidence, the release ran in favor of both the cab company and defendant Carter.[1] ▮ Plaintiff testified at the trial that, when executed by him, the release did not name Carter and that, in fact, a prime consideration for his acceptance of the offered sum was the representation by the adjuster that plaintiff had a good cause of action against Carter and could sue him. The trial court decided this issue in favor of defendants.

Plaintiff was the sole witness to testify in person as to the conversation between him and the adjuster or as to the events leading up to and surrounding the execution of the release. McCarthy was deceased at the time of the trial and his deposition was offered by defendants in contradiction of plaintiff's testimony. McCarthy denied making any representations to plaintiff as to his rights against Carter and insisted that the release, when executed, contained Carter's name as a party being released from liability. The trial judge, at the close of the case, stated he considered McCarthy's deposition to be credible and would accept its version insofar as it was inconsistent with the oral testimony of plaintiff. ▮ It is well settled that, while a trial court may not arbitrarily reject testimony, still it is free to reject the testimony of a witness, even if uncontradicted, if there is any rational ground for so doing. (*Huth* v. *Katz* (1947) 30 Cal.2d 605 [184 P.2d 521]; *Blank* v. *Coffin* (1942) 20 Cal.2d 457, 461 [126 P.2d 868]; *Giannini* v. *Bank of America* (1951) 101 Cal.App.2d 805 [226 P.2d 712].) ▮ Here, not only was the testimony of

[1]The release relied on does not expressly release defendant Hanna. The case was tried and appealed on the theory that, if valid in favor of Hanna's employer, the Yellow Cab Company, it released him. Since the issue, not having been raised, is not before us, we do not pass on the validity of this assumption. (See Annotation 126 A.L.R. 1199; *Losito* v. *Kruse* (1940) 136 Ohio St. 183 [24 N.E.2d 705, 126 A.L.R. 1194]; *Lamoreaux* v. *San Diego etc. Ry.* (1957) 48 Cal.2d 617 [311 P.2d 1].)

plaintiff contradicted by McCarthy's deposition but there were factors which could well have led the trial judge to mistrust plaintiff's testimony. Admittedly, he had changed his deposition as to these very matters; his testimony, in general, was inconsistent and, in some instances, demonstrated to be inaccurate; and the release itself, examined by the trial judge and by us, is more consistent in its physical appearance with McCarthy's version than with that of the plaintiff. ■ Absent any showing of ambiguity in the release or fault on the part of the defendants, plaintiff's unilateral mistake (if in fact any mistake existed) will not prevent formation of a contract nor will it provide a ground for rescission. ■ Under the objective test, a "meeting of the minds" is unnecessary, and a party may be bound though he misunderstood the terms of a proposed contract and actually had a different undisclosed intention. (*Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128 [48 P.2d 13].)

■ We conclude that, insofar as plaintiff claims not to have intended to release Carter, the trial court's adverse finding is supported by the record and should stand.

## II

Within a few days after the release was executed, plaintiff for the first time consulted an attorney. On March 18, 1957, the attorney, acting on plaintiff's behalf, wrote the defendant cab company purportedly rescinding the release and tendering back the $150 paid to plaintiff.[2] The cab company rejected the purported rescission and this action followed. Admittedly, the rescission, if otherwise proper, was made promptly and before any change of position on the part of the releasees. ■ As a ground for rescission, plaintiff seems to rely on the contention (divided by him into two parts) that, in view of the extent of the injuries, the consideration was so inadequate as to shock the conscience of the court. The trial court found, on a record adequate to support the finding, that a herniated disk, discovered three years after the accident, was not the result of the accident. Thus, the only injuries attributable to the accident were plaintiff's cut on the head, some abrasions and two fractured ribs.

[2]The original consideration was by a check drawn to plaintiff's order by "Commercial Adjusting Service." This check was cashed by plaintiff and the tender was by another check or draft. No point, of course, is made of the cashing of the check; nor is any point made of the lack of identity of the original payor and the one to whom tender was made. Neither is any point made of the lack of a notice to Carter of the attempted rescission.

Plaintiff was never hospitalized, although he returned to the hospital, as an outpatient, for treatment of the ribs. He was discharged by the hospital as recovered within three weeks after the accident. His hospital bill was $21. Although he now claims to have been unable to work for an extended period, he consulted no physicians for three years after the accident. The trial court concluded the injuries were minor and that the $150 consideration was adequate. This finding also, being supported by the evidence, binds us.

### III

■ Plaintiff claims that the release was obtained by fraud and undue influence. Material misrepresentation, a necessary element of fraud, is absent in this case. Plaintiff testified that, at the time of the release, he knew of the scalp injury and that his side hurt. As is above pointed out, the claimed herniated disk is not involved. Hence at the time of the execution of the release, there were no unknown injuries within the meaning of *Casey* v. *Proctor* (1963) 59 Cal.2d 97 [28 Cal.Rptr. 307, 378 P.2d 579], requiring an evaluation of the consideration paid in the light of subsequently discovered injuries and the intent of the parties with respect thereto. The issue of plaintiff's relative education, experience and mental ability, as compared to those of the adjuster, were submitted fully to the trial court, which expressly ruled against him. ■ Where the evidence does not establish a confidential relationship, there is no presumption arising from advantage gained. ■ The burden of proof is on plaintiff to establish undue influence. (*Dorn* v. *Pichinino* (1951) 105 Cal.App.2d 796 [234 P.2d 307].) ■ In the instant case, the trial court properly ruled that plaintiff failed to meet that burden. Plaintiff's further argument that the corporate defendant ''has a long history of defrauding ignorant, innocent, poor, helpless and disabled claimants'' is based on nothing in the record; it is shockingly improper, should not have been made, and deserves no further consideration.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 12, 1963.