[Civ. No. 900.    Fifth Dist.    Dec. 20, 1967.]

Q.S.W. CORPORATION, Plaintiff and Appellant, v. DELL
M. MALICK et al., Defendants and Respondents.

John H. Convery for Plaintiff and Appellant.

McCray & McCray for Defendants and Respondents.

CONLEY, P. J.—This appeal originated in the Third
Appellate District but was transferred to this forum by the
Supreme Court. Prior to the transfer, the appellant filed an
opening brief on March 20, 1967; and the Third Appellate
District notified counsel for the respondents under date of
April 25, 1967, pursuant to rule 17(b) of the California Rules
of Court, that if the respondents' brief were not filed within
30 days thereafter the case would be submitted for decision on
the record, including appellant's opening brief, unless the
appellant desired to argue. No brief was filed by respondents,

and as the appellant's counsel stated he did not desire to argue the case, the cause was submitted for decision by order of this court on the 6th day of December, 1967.

While we are authorized by the rule in question to accept as true the statement of facts in the appellant's opening brief, we have nevertheless checked the record *in extenso* to verify facts made evident by appellant, and we are persuaded that such statment is by and large correct.

The facts are, therefore, as follows: On the 29th day of December, 1964, Dell M. Malick, acting for himself and his wife, and accompanied by Nial Lueking, an employee, and W. Mike McCray, one of his attorneys, met John Strater, William Wright and Louis Quick, directors and officers of the plaintiff, Q.S.W. Corporation, at about 9 o'clock in the evening in the Hilton Inn at San Francisco Airport for the purpose of entering into a contract for the purchase by the corporation from the Malicks of a trailer park in Redding. Attorney McCray produced an eight-page typewritten conditional sales contract covering the sale and purchase of Twin View Terrace Mobile Home Park. The contract was agreed to, the blanks in the prepared agreement filled in and the contract signed during the early morning hours of December 30, 1964, at which time the plaintiff corporation paid the Malicks $10,000 by check. At the same meeting, Attorney McCray wrote out a cancellation agreement, which was executed by the same parties; this second agreement was to take effect if the corporation should be unable to raise $110,000 to finance the purchase by February 1, 1965. It was hoped that the three officers and directors could borrow that amount, on behalf of the corporation, from a trust fund in St. Louis, the beneficiary of which was Quick's mother. However, it developed that the trustee bank refused to release any funds pending an audit of that and several other trust funds necessitated by the defalcation of a trustee. Quick made numerous other attempts to obtain financing but without favorable result. McCray told Quick on March 27, 1965, that he could arrange a loan from another source, but that did not eventuate.

Quick and his associates finally determined that it would be impossible for them to obtain the necessary financing and they sent wires on March 28, 1965, to Malick, McCray and Lueking so stating. Thereafter, they made numerous requests for the return of the $10,000 payment, but no part of that sum has ever been repaid. No five-day notice of default mentioned in the conditional sales contract was ever received by

Q.S.W. On January 1, 1966, there was executed a purported contract whereby McCray himself assumed to buy the trailer park from the Malicks for $465,000; that amount was $30,000 more than the plaintiff had agreed to pay defendants for the property. It is somewhat mysterious, to say the least, to find Malicks' confidential attorney purporting to buy the land from them, but it is only one of the unsolved factors that enter into the unsatisfactory evidence in the case.

The trial judge held that the defendants were without liability to repay all or any part of the $10,000. It is the problem of this court to determine whether or not the trial judge's solution of the situation was justified by the pleadings and evidence. In the first place, we must examine the pleadings, even if briefly. The complaint alleges that the plaintiff corporation and the defendant Dell M. Malick, acting for himself and as agent for his wife, made a written contract for the sale by Malick and the purchase by the corporation of the Twin View Terrace Mobile Home Park by virtue of a contract of conditional sale in connection with which the corporation paid Malick the sum of $10,000 cash on a total purchase price of $435,000. Paragraph V of the first cause of action of the complaint alleges that concurrently with the execution of the contract of conditional sale there was also signed by the same parties, at the San Francisco meeting above referred to, a cancellation agreement which provided that if the purchaser was unable to raise $110,000 to finance the purchase agreement by February 1, 1965, that contract would be cancelled and the $10,000 repaid to the corporation; in those circumstances, the corporation would have no further rights as against the Malicks. The complaint further alleged that the money to finance the purchase could not be raised and that the $10,000, which had been paid by the purchaser, had never been paid back to it as agreed in the cancellation agreement.

There was an answer in which it was admitted by the Malicks that $10,000 had been paid as down payment pursuant to the conditional sales contract, but in substance that the corporation had waived the right to the $10,000, and had told the Malicks that it would proceed with the purchase substituting a trust deed transaction for the conditional sales contract. The defendants also filed a counterclaim in which they asked for damages in the sum of $25,000. The plaintiff in turn denied that the Malicks had been damaged in any respect or particular or at all. As stated above, there is more than one unclear factor entering into the situation; in view of the fact that we

deem it necessary to reverse the present judgment and order a new trial for the reasons hereinafter stated, we express the hope that these mysterious angles will be clarified on retrial.

In any event, the findings are erroneous. They omit many issues that are essential, and there are also findings on issues which have no support in the record. There is a total failure to make any findings on the painstakingly alleged defense to the effect that there was a waiver by the corporation of the repayment of the $10,000, and that the alleged purchaser agreed to substitute a trust deed deal for the conditional contract of purchase. Whether that possibility in fact occurred or whether there was any writing by way of amendment to the contract of purchase to set forth a revision of the agreements is full of doubt; did the plan for the sale fail factually, or was it ineffective because of the lack of an amendment to the existing written contracts, or was there no evidence to substantiate the alleged defense?

Unless there was a waiver or a legal modification of the cancellation contract, it is clear that contrary to the trial court's conclusions of law the purchaser would be entitled to a return of the $10,000. The finding to the effect that the purchaser had only a "reasonable time" to get its $10,000 back is contrary to common sense and the express wording of the cancellation agreement. If there was no legitimate change in the terms of the contractual relationship of the parties, the purchaser was clearly entitled to the repayment of the $10,000 by virtue of the express provisions of the cancellation agreement.

■ It is elementary that the court in a nonjury trial must find on all of the material elements of the litigation; here the trial court did not fulfill its duty by its failure to make findings on all of the major issues created by the pleadings. As is stated in *San Jose etc. Title Ins. Co.* v. *Elliott,* 108 Cal.App.2d 793, 801-803 [240 P.2d 41] : "This was error of a most serious, prejudicial, and reversible nature. 'It has been repeatedly affirmed that where a court renders a judgment without making findings upon all material issues of fact, the decision is against law, and constitutes ground . . . for reversal upon appeal, provided it appears that there was evidence introduced as to such issue and the evidence was sufficient to sustain a finding in favor of the party complaining.' [Citation.]

". . . . . . . . . . . .

". . . Here we are involved with a total failure to find on a

material issue. The law is clear that the trial court must find on all issues, unless findings are waived. . . .

". . . The failure to object [to the findings] however, is not a waiver of the failure to find at all on a material issue." (See also *Maulhardt* v. *California Director of Public Works,* 168 Cal.App.2d 723, 730-731 [336 P.2d 631]; *Perry* v. *Jacobsen,* 184 Cal.App.2d 43, 49 [7 Cal.Rptr. 177]; *Peterson* v. *Ellebrecht,* 205 Cal.App.2d 718 [23 Cal.Rptr. 349]; *Kreisa* v. *Stoddard,* 127 Cal.App.2d 627 [274 P.2d 164]; 48 Cal.Jur.2d, Trial, § 282, pp. 285-286.)

The conclusions of law, being based on vitally defective findings of fact, are themselves improper.

Entirely apart from all other errors in the case, the award, in effect, of $10,000 in damages to the seller irrespective of the facts seems contrary to the modern doctrine relative to a situation of this kind enunciated in *Freedman* v. *Rector,* 37 Cal.2d 16, 22-23 [230 P.2d 629, 31 A.L.R.2d 1]. The principle effective today that a defaulting vendee may recover the excess of his part payments over the amount of damages caused by his breach is apparently not honored by the judgment. The trial court erroneously permitted the defendants to retain the land as well as the $10,000. (*Honey* v. *Henry's Franchise Leasing Corp.,* 64 Cal.2d 801, 803 [52 Cal.Rptr. 18, 415 P.2d 833].)

In *Evans* v. *Rancho Royale Hotel Co.,* 114 Cal.App.2d 503, 508-509 [250 P.2d 283], the following comment is apropos: "As was said in *Winton* v. *Spring,* 18 Cal. 451, 454, 455: " 'The agreement of cancellation evidently was intended to effect a complete settlement in regard to the subject; it discharges the parties from all covenants and agreements in the original contract, and provides for a surrender of the premises. . . . It is much more probable that when parties come to an arrangement of a business matter, they settle all the terms of the contract, than that they leave them unadjusted. The word "cancel," applied to the agreement, under the circumstances, means no more than "doing away with" an existing agreement upon the terms and with the consequences mentioned in the writing. What is not said, is excluded; and whatever was meant to be obligatory was expressed.' "

The judgment is reversed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied January 16, 1968.