[Civ. No. 26187. First Dist., Div. Two. May 11, 1970.]

DOUGLAS LARSEN et al., Cross-complainants and Appellants, v. ALLAN R. JOHANNES, Cross-defendant and Respondent.

492

## COUNSEL

Harold R. Farrow and Anne R. Grupp for Cross-complainants and Appellants.

Farella, Braun & Martel and David H. Melnick for Cross-defendant and Respondent.

## OPINION

**DAVID, J.,**[*] — Respondent Johannes was employed by appellant landowners to design a large $900,000 apartment house project. He prepared the basic architectural plans and specifications. Disputes arose before any further architectural services were rendered during actual construction or any supervision was provided. The landowners purported to terminate his contracts for services. Thereafter, there was a mutual rescission. In this

---

[*] Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

transaction, the parties executed a mutual release "from any and all claims, demands, actions, or suits of any kind, arising out of any liability, known or unknown, of said parties to each other, including but not limited to, any liability arising out of the agreements made by the parties on August 21, 1962, January 15, 1965, and March 30, 1965, with respect to The Pentagon Apartment project."

Based upon such rescission and the mutual release, Johannes secured a summary judgment, upon appellants' refusal to honor this settlement and to relieve him of this claim, suing him in their cross-complaint filed herein. This appeal followed.

The controversy is based upon the following documents: (1) the contracts between appellant owners and architect Johannes for architectural services; (2) the letter of May 9, 1965 from appellants to Johannes, purporting to terminate the contracts in (1); (3) the response of Johannes, dated May 11, 1965, denying the right to end their contracts, and offering to do so upon an additional payment and execution of the mutual release clauses referred to, thereafter executed by three of the appellants on behalf of all; (4) the owner-builder contract, so far as it relates to architectural services.

The notice of motion indicated reliance upon all the files in this action, and the pleadings incorporating the documentation. This was sufficient to bring them before the court (*People* ex rel. *Mosk* v. *Lynam* (1967) 253 Cal.App.2d 959, 964-965 [61 Cal.Rptr. 800]); and appellants' opposing affidavits affirmatively incorporate the documents by reference. Both parties rely upon them. Thus they were properly before the trial court upon the motion for summary judgment (*Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229, 234 [7 Cal.Rptr. 497]). Since the determination of the trial court is one of law based upon the instruments, the appellate court must make its own independent determination of their construction and effect (*Consolidated Theatres, Inc.* v. *Theatrical Stage Emp. Union No. 16* (1968) 69 Cal.2d 713, 724 [73 Cal.Rptr. 213, 447 P.2d 325]: *Estate of Russell* (1968) 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353].)

The pleadings have been carefully considered, to determine whether the issues presented on the motion for summary judgment are triable and whether a genuine cause of action exists (*Craig* v. *Earl* (1961) 194 Cal.App.2d 652, 655 [15 Cal.Rptr. 207], and cases cited; *Michelman* v. *Frye* (1965) 238 Cal.App.2d 698 [48 Cal.Rptr. 142]) as well as to determine the admissions pertinent to the motion for summary judgment (cf. *Jack* v. *Wood* (1968) 258 Cal.App.2d 639, 647 [65 Cal.Rptr. 856]), and which need not be incorporated in the affidavits on a motion for summary judgment (*Reich* v. *Yow* (1967) 249 Cal.App.2d 12, 14-15 [57 Cal.Rptr.

117], and cases cited, including *University of Southern Cal.* v. *Weiss* (1962) 208 Cal.App.2d 759, 767 [25 Cal.Rptr. 475]).

We summarize from the pleadings those matters which bear upon this controversy.

The attempted discharge of Johannes as architect was prompted (in part, at least) by the previously declared intention of appellants to dispense with the supervisory architectural services which he was to perform during the construction of the $900,000 apartment house project.

In the complaint, the builder sued appellants for a balance due, and for an item of $43,000 damages, asserting that after discharge of Johannes, appellants did not, as the contract contemplated, provide an architect to assist in supervision, interpreting the plans, and providing detailed drawings; though the work was to be done to the satisfaction of the architect and the owner. Answering with general denials, appellants cross-complained and added Johannes as a cross-defendant.

Of him, it was alleged that he at all times had held himself out as a fully qualified and experienced architect, licensed as such, and that he undertook to design appellants' apartment building and to provide plans and specifications of sufficient completion, quality and clarity to accomplish such purpose.

It was then alleged of the cross-defendants that "they negligently and carelessly designed, drew plans and specifications for, obtained defective materials, and negligently and carelessly supervised and performed the work, labor and construction of said building in such manner as to cause said structure and its accompanying improvements to be completed in a defective and deficient manner . . . in . . . the roofing, exterior walls, doors and windows, weather tightness, bathroom tiling and fixtures, wiring, laundry and exterior lighting facilities, grouting around bathroom fixtures, finish work, drawers, fixtures in apartments, swimming pool, and elevator." Demand of each of them to perform is alleged to have been made against cross-defendants and their failure and refusal to do so to appellants' damage is averred.

It is then alleged that the appellants have expended $16,000 for cure and repair of certain defects, will have to make additional repairs, and by delays lost the use of the apartments constructed, to their damage. It then is alleged that the contractor has claimed the defects are the result of poor design rather than of improper or incomplete construction, and that respondent Johannes has claimed that the defects and insufficiencies are the results of improper construction; that both the contractor and Johannes are joined

as cross-defendants, as cross-complainants have no means of knowing or ascertaining the respective liabilities of the contractor and the architect, but allege that appellants' damage is the result of the negligence and carelessness of one or both of such cross-defendants.

Johannes denied such allegations, and additionally, pleaded the settlement agreement between the parties, by which his services as architect were terminated, and pleaded as well the contracts under which he was employed. Under the abrogated contracts, in addition to the basic plans and specifications, Johannes was to provide working drawings and specifications, and all architectural, engineering and consulting services with conferences, preparation of preliminary studies, and large-scale and full-size detail drawings, as might be required. He was to supervise the work, determining the builder's compliance, advising the owner of any omissions, substitutions, defects and deficiencies in performance. Payments to the builder were to be upon his certificate. He did not guarantee the performance of the building contracts.

Paragraph 11 of their agreement provided that either the architect or the owners, the appellants here, might terminate this agreement "for reason of noncompliance with any of the aforesaid provisions by the other party. In addition, both principals will recognize as valid reason for termination, any request by the Federal Housing Administration based upon inadequate performance, undue delay or misrepresentation which may make the further services of the Architect unacceptable to the Administration." No such request by the FHA is pleaded nor indicated in appellants' opposing affidavits.

On May 9, 1965, attorney Walter Kaitz, one of the joint venturers, appellants herein, advised Johannes: "The question of architect supervision during the construction period of the Pentagon Apartments was fully discussed with FHA in San Francisco and it has been decided to dispense with such supervision. Consequently, in compliance with such decision by FHA and with Section 11 of the Owner-Architect Agreement, I wish to advise you that your supervisory services will not be required and pursuant to our telephone discussion of this date your services are terminated."

Such a determination to dispense with the further services of Johannes was an outright breach of the contract with Johannes, unless in fact his performance, including the preparation of plans, specifications, etc., was then in fact inadequate. In responding to this notice from the owners, Johannes denied any noncompliance. He offered to make a settlement and to terminate the contract, upon additional payments being made to him; and as a term thereof, upon the execution of the following agreement:

"3. The mutual release by The Pentagon, a joint venture, and each member thereof, jointly and severally, on the one hand, and Allan R. Johannes, on the other, each for themselves, himself and herself, their heirs, executors, administrators, successors and assigns, none of whom admit any liability and all of whom expressly deny any liability, as between themselves, from any and all claims, demands, actions, or suits of any kind, arising out of any liability, known or unknown, of said parties to each other, including but not limited to, any liability arising out of the agreements made by the parties on August 21, 1962, January 15, 1965, and March 30, 1965, with respect to The Pentagon Apartment project.

"4. The assent of the parties to this settlement shall be evidenced by the signature of Allan R. Johannes, herewith, and The Pentagon Apartments, a joint venture, by not less than three members, on the photostatic copy enclosed and returned to me not later than May 21, 1965.

[This was signed as indicated:]

"Allan R. Johannes.

"The Pentagon Apartments

"Walter Kaitz

"Carl L. Fuller

"Julius A. La Quaglia"

No more precise words in the English language could have been employed to mutually terminate and rescind their relationship (cf. Civ. Code, § § 13; 1541).

The parties thereto were discharged and released. (Rest., Contracts § 402, subd. (1).)

Respondent Johannes moved for summary judgment on the cross-complaint, upon the ground that the action against him was barred by the above agreement. The motion was based upon the notice, the pleadings, records and files in the lawsuit, points and authorities and the declaration of Allan R. Johannes.

Johannes referred to his contract, the termination of his services by notice from Kaitz, and the preparation and execution of the settlement agreement relied upon. "No work was performed by me thereafter on the project, and all concerned parties fully intended and understood that I would take less than I was claiming under the agreements only if I was fully released from all claims and responsibility, whether 'known or unknown' as stated in the settlement and release agreement."

Declarations of the three appellants who signed the settlement agreement were filed. All uniformly stated that it was their understanding that the "release . . . had as its sole purpose the settlement of our liability to cross-defendant for services rendered and for the dismissal" and that the architect's liability for his prior performed work was not in issue in any way; that they would not have signed if they had known he intended the language of his letter of May 11, 1965 to apply to claims arising from his negligence in performing as an architect. Each also stated, "it was my intention that I thereby settled contractual relations between myself and cross-defendant only with respect to these matters . . . ."

All affirmatively asserted that in assenting to the rescission and termination of the architect's contract, they "were buying cross-defendant's contract," and that he "was released from any duty to perform further services for us." They, of course, in the mutual release, were released from any further liability to him.

Such protestations are not available to refute the plain, clear and explicit declarations of the agreement between the parties, terminating their relationships, of which the mutual release is evidentiary. All parties thereafter acted in reliance upon the agreement. Appellants do not assert the words of their release, accord and satisfaction and covenant against claims and actions are ambiguous in the slightest degree.

■ Parol evidence is not admitted to show that the appellants "meant something other *than* what they said but by showing what they meant *by* what they said." (*United Iron Works* v. *Outer Harbor etc. Co.* (1914) 168 Cal. 81, 84 [141 P. 917], cited in *Rilovich* v. *Raymond* (1937) 20 Cal.App.2d 630, 639 [67 P.2d 1062], approved and cited in *Estate of Platt* (1942) 21 Cal.2d 343, 353 [131 P.2d 825].) ■ Since the words of the contract for rescission itself are not ambiguous, the construction of the agreement in issue is a question of law for the court (*United States Leasing Corp.* v. *DuPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]). The issue relates to their legal effect, based solely upon *Casey* v. *Proctor* (1963) 59 Cal.2d 97 [28 Cal.Rptr. 307, 378 P.2d 579].

■ The assertions in the appellants' affidavits which attempt to "show that they meant something other than what they said," are incompetent testimony (*Eustace* v. *Dechter* (1942) 53 Cal.App.2d 726, 729, 735 [128 P.2d 367]) and affiants could not competently testify thereto, as required by Code of Civil Procedure section 437c in relation to summary judgment. The alleged "facts" must be competent and admissible as evidence (*Shea* v. *Leonis* (1938) 29 Cal.App.2d 184, 188-189 [84 P.2d 277]). ■ Upon a motion for summary judgment, there is no waiver of the right to object to incompetent evidence (*Rodes* v. *Shannon* (1961) 194 Cal.App.2d 743,

749 [15 Cal.Rptr. 349]). ■ A motion for summary judgment cannot be defeated by statements of inadmissible evidence in the opposing affidavits (*Burke* v. *Hibernia Bank* (1960) 186 Cal.App.2d 739, 743-744 [9 Cal.Rptr. 890]; *Miley* v. *Harper* (1967) 248 Cal.App.2d 463, 468 [56 Cal.Rptr. 536]).

In passing, we note Exhibit A to the affidavit of Carl L. Fuller, his letter to the FHA dated April 30, 1965, is hearsay and not competent evidence against Johannes.

■ The general rule is that when a person with the capacity of reading and understanding an instrument signs it, he is, in the absence of fraud and imposition, bound by its contents, and is estopped from saying that its explicit provisions are contrary to his intentions or understanding (*Crow* v. *P. E. G. Constr. Co.* (1957) 156 Cal.App.2d 271, 277 [319 P.2d 47], a contractual release; *Folden* v. *Lobrovich* (1959) 171 Cal.App.2d 627, 630 [341 P.2d 368]; *William B. Logan & Associates* v. *Monogram Precision Industries* (1960) 184 Cal.App.2d 12, 16-17 [7 Cal.Rptr. 212], arbitration award; *Ames* v. *Irvine Co.* (1966) 246 Cal.App.2d 832, 839-840 [55 Cal.Rptr. 180], summary judgment; cf. *Laux* v. *Freed* (1960) 53 Cal.2d 512, 523 [2 Cal.Rptr. 265, 348 P.2d 873]; *Currin* v. *Currin* (1954) 125 Cal.App.2d 644, 653 [271 P.2d 61]).

The transaction rescinding and terminating the contract interposes at the outset a bar to suit against Johannes, apart from the release clause. In *Lemle* v. *Barry* (1919) 181 Cal. 1, 5 [183 P. 150] (concurring opinion), it is stated: "When a contract is rescinded, it ceases to exist. If the action to rescind or an action based on an alleged rescission or abandonment is successful, the contract is forever ended and its covenants cannot thereafter be enforced by any action. . . . But if the facts exist which justify a rescission by one party, and he exercises his right and declares a rescission in some effectual manner, he terminates the contract, and it cannot thereafter be made the basis of an action for damages caused by a breach of its covenants."

This is the general rule. (24 A.L.R. 253; 17 Am.Jur.2d p. 1002, § 516.) This rule was quoted and expressly approved in *House* v. *Piercy* (1919) 181 Cal. 247, 252 [183 P. 807], reaffirmed in *Hollypark Realty Co.* v. *MacLoane* (1958) 163 Cal.App.2d 549, 552 [329 P.2d 532], contract; *Dyer Bros. Golden West Iron Works* v. *Central Iron Works* (1925) 72 Cal.App. 202, 208-209 [237 P. 386]; *Early* v. *Forbes* (1935) 5 Cal.App.2d 726, 727 [43 P.2d 368]; and cf. *Oakland Cal. Towel Co.* v. *Roland* (1949) 93 Cal.App.2d 713, 716 [209 P.2d 854], recognizing the rule; *Faye* v. *Feldman* (1954) 128 Cal.App.2d 319, 328 [275 P.2d 121], settlement and release; *Los Angeles City School Dist.* v. *Landier Inv. Co.* (1960) 177

Cal.App.2d 744, 752 [2 Cal.Rptr. 662]. After a contract has been rescinded by mutual agreement, neither party can maintain an action for a previous breach, unless the agreement itself affirmatively reserves the right. (*Early* v. *Forbes, supra,* 5 Cal.App.2d at p. 728; 17 Am.Jur.2d p. 1003, § 517, n. 18, 19, 20.)

Appellants cannot deliberately wipe out all contractual obligations for a consideration, and then reassert them against Johannes in the guise of a tort duty (*Evans* v. *Rancho Royale Hotel Co.* (1952) 114 Cal.App.2d 503, 508 [250 P.2d 283]; *Honda* v. *Reed* (1958) 156 Cal.App.2d 536, 539-540 [319 P.2d 728]; *Q.S.W. Corp.* v. *Malick* (1967) 257 Cal.App.2d 277, 281 [64 Cal.Rptr. 722]). The architect is not a joint tortfeasor with the builder (*Alexander* v. *Hammarberg* (1951) 103 Cal.App.2d 872, 879 [230 P.2d 399]).

The agreement between the parties wiped out the obligations mutually upon them, arising out of the contracts. (Civ. Code, § 1688.) One of such obligations, as alleged and relied upon by appellant cross-complainants, was "to design such a building and to provide plans and specifications of sufficient completion, quality, and clarity to accomplish said purpose."

Although appellants have attacked that portion of the settlement which mutually released claims and obligations under Civil Code section 1542, it is well to note that Civil Code section 1688 provides, "A contract is extinguished by its rescission." Likewise, the arrangement between the parties was a mutual accord and satisfaction and a covenant not to make claims or to sue, not merely a release. As said in Civil Code section 1521, "An accord is an agreement to accept, in extinction of an obligation, something different from or less than that to which the person agreeing to accept is entitled"; and section 1523: "Acceptance, by the creditor, of the consideration of an accord extinguishes the obligation, and is called satisfaction." (*Stub* v. *Belmont* (1942) 20 Cal.2d 208, 218 [124 P.2d 826].)

Thus, whatever considerations attach to the release clause of the settlement agreement, the ruling of the trial court was correct because no cause of action existed (cf. *Loma Portal Civic Club* v. *American Airlines, Inc.* (1964) 61 Cal.2d 582, 588 [39 Cal.Rptr. 708, 394 P.2d 548]; *Hayward Union etc. School Dist.* v. *Madrid* (1965) 234 Cal.App.2d 100, 123-125 [44 Cal.Rptr. 268]; *Walsh* v. *Glendale Federal Sav. & Loan Assn.* (1969) 1 Cal.App.3d 578, 585 [81 Cal.Rptr. 804], a summary judgment; *Smith* v. *City of San Jose* (1965) 238 Cal.App.2d 599, 603-604 [48 Cal.Rptr. 108], a summary judgment). Code of Civil Procedure section 437c itself provides for dismissing a complaint under such circumstances.

Absent a legal right, a party is not entitled to proceed to trial (*Taliaferro*

v. *Coakley* (1960) 186 Cal.App.2d 258, 261 [9 Cal.Rptr. 529]; cf. *Wilson* v. *Sharp* (1954) 42 Cal.2d 675, 677 [268 P.2d 1062]).

These considerations are properly considered on appeal in support of the judgment, though not urged before the trial court (*Burdette* v. *Rollefson Constr. Co.* (1959) 52 Cal.2d 720, 726 [344 P.2d 307]; *Ward* v. *Taggart* (1959) 51 Cal.2d 736, 742 [336 P.2d 534]; cf. *Exchequer Accept. Corp.* v. *Alexander* (1969) 271 Cal.App.2d 1, 12 [76 Cal.Rptr. 328]; *Allstate Ins. Co.* v. *Orlando* (1968) 262 Cal.App.2d 858, 867 [69 Cal.Rptr. 702]).

Since the appellants' controvening affidavits do not show a cause of action on the merits, they fail under the authorities above cited (*Terrell* v. *Local Lodge 758, etc. Machinists* (1957) 150 Cal.App.2d 24, 28 [309 P.2d 130], citing *Hardy* v. *Hardy* (1943) 23 Cal.2d 244, 246-247 [143 P.2d 701]).

■ If appellants were mistaken as to the legal effect of their compromise agreement and the release, rescission cannot be effected now without showing the mistake was mutual (*Myers* v. *Carter* (1963) 215 Cal. App.2d 238 [30 Cal.Rptr. 91], involving a release) or arose from an unrectified misrepresentation of which the other was aware (Civ. Code, § 1578; *Los Angeles City School Dist.* v. *Landier Inv. Co., supra,* 177 Cal. App.2d 744). No such contentions or considerations are apparent here.

■ Without rescission, and restoration of benefits received, a party may not avoid such a contract, including the release (Civ. Code, § 1691; *Eustace* v. *Lynch* (1941) 43 Cal.App.2d 486 [111 P.2d 372]). ■ The contract of settlement may not be rescinded partially (*Simmons* v. *California Institute of Technology* (1949) 34 Cal.2d 264, 275 [209 P.2d 581]). One insuperable obstacle to rescission is that Johannes cannot be restored to status quo. The project has been constructed, and despite his full contractual right to the compensation agreed upon, he would be without the power to supervise, to give additional details, to correct defects, and thus protect himself from that responsibility which appellants seek to pass on to him now in the cross-complaint. Likewise, since construction, it would be impossible for appellants to have the benefit of such services.

■ Where the parties have dealt openly with each other, with no advantage taken of each other, we adhere to the view that their written engagement is binding, as the deliberate and definite expression of their intention in reference to their contractual relationships (Civ. Code, §§ 1638, 1644) subject to rights of rescission where they exist (Civ. Code, § 1689). None is indicated here. The unilateral "mistake" urged by appellants is not such a ground. (*Lawrence* v. *Shutt* (1969) 269 Cal.App.2d 749, 765 [75 Cal.Rptr. 533].) Urging it does not create a triable issue of fact (Civ. Code, §§ 1580, 1589; *Myers* v. *Carter, supra,* 215 Cal.App.2d

238, 241, citing *Brant* v. *California Dairies, Inc.* (1935) 4 Cal.2d 128, 133-134 [48 P.2d 13]; *Grebe* v. *McDaniel* (1968) 265 Cal.App.2d 901, 903-904 [71 Cal.Rptr. 662], affirming summary judgment; *Founders' Ins. Co.* v. *Lanco Dev. Corp.* (1963) 221 Cal.App.2d 503, 505 [34 Cal.Rptr. 522]).

We are convinced that since the release clause only states what the law otherwise provides upon the admitted facts of the rescission of the contract between appellants and Johannes, the release is valid and is not subject to appellants' further contentions.

Appellants contend that their release was qualified by Civil Code section 1542, and that the trial court erred in holding there was no triable issue of fact, under *Casey* v. *Proctor, supra,* 59 Cal.2d 97. We hold that the agreement of the parties effectually waived Civil Code section 1542.

Civil Code section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

In the document in question, the respondent architect was the creditor, at the time of the transaction; and the appellants were the debtors. The release was a mutual release. The section does not apply in situations like that considered here (*Mesmer* v. *White* (1953) 121 Cal.App.2d 665, 674-675 [264 P.2d 60]).

 If there be any distinction between a "general release" and a special release, this was not a "general release" since it was restricted specifically to those actions or claims rooted in the contracts for architectural services (*Eustace* v. *Dechter, supra,* 53 Cal.App.2d at pp. 729, 735; *Estate of McLellan* (1939) 35 Cal.App.2d 18, 21 [94 P.2d 408]).

In *Casey* v. *Proctor, supra,* 59 Cal.2d 97, upon which appellants rely, the court enunciated special rules applicable to releases executed for personal injuries (p. 112). But the policy of the law applicable in this case is stated therein, at page 111: "On the one hand, the policy of the law is to encourage out-of-court settlements. To further this policy the parties to a dispute should be encouraged to negotiate settlements and to enter into releases. In the absence of unfair conduct on the part of the releasee, the law should extend its protection to the stability of the transaction by holding the parties to the express terms of the release. If later discovered injuries may be asserted, no release would be final and free from attack until the statute of limitations has run."

The opposing considerations applicable to a release pertaining to a per-

sonal injury, subsequently discovered, do not operate here. There is no insurance company receiving a windfall, through release of an obligation it was paid to assume (*id.,* p. 111); nor is there damage to human tissue "difficult to anticipate where the opportunity for error is great" (*id.,* p. 111); the release was not drafted by experts and presented in a "take it or leave it manner" (*id.,* p. 111). Here, the appellant Kaitz, one of the signatory owners, who acted to discharge respondent on behalf of all, is also an attorney at law, through whom the ultimate release was executed and transmitted by the appellants to Johannes.

■ Despite the language of the release, it is contended by appellants that they did not know it would bar claims for damages against the respondent architect arising out of any past defects in his performance under the contract of employment. We regard the language of the release to be specific on this point: "*including* but not limited to, any liability arising out of the agreements made by the parties August 21, 1962, January 15, 1965, and March 30, 1965, with respect to The Pentagon Apartment project." (Italics added.) ■ Any failure to read or understand the purport of such specific language is in itself the breach of appellants' legal duty upon which appellants cannot rely to avoid their contract of release (*Casey* v. *Proctor, supra,* 59 Cal.2d at pp. 104-105; *Mesmer* v. *White, supra,* 121 Cal.App.2d at p. 673). With the abrogation of respondent's contract, and his inability to insure proper performance by supervision of the project, and completion by others, the parties cannot be placed in status quo; and the action by others without his supervision in interpretations of the plans and specifications is a possible detriment which cannot be overcome. Any mistaken belief of appellants that the release extended only to respondent's compensation therefore does not permit rescission.

The special rule of *Casey* v. *Proctor, supra,* 59 Cal.2d at pp. 109-110, as applied to releases of personal injury claims is, "While the specific inclusion of a discharge of claims for 'injuries known and unknown' perhaps adds weight to the argument that such claims were intended to be discharged by the release, it does not add to the scope of the release. The question remains as one of fact whether the releaser actually intended to discharge such claims. If the evidence, independent of the words of the release, indicates that the parties have consciously contracted in reference to unknown claims, the release is, of course, binding." The same case, at page 113, states this is a question of fact, detailing the type of substantial evidence in personal injury cases that will "support a holding that plaintiff may avoid the release."

Thus in personal injury cases, instead of holding that the formal contract of release of future claims by the parties may not be varied by parol evidence (Civ. Code, §§ 1639, 1638, 1644, 1641), it is held on the grounds

of public policy that it must be corroborated by parol evidence. No such public policy exists in this commercial transaction; there are none of the factors which in the personal injury suit are held to justify unilateral rescission of a release deliberately given.

If such a rule is applicable to the mutual contractual settlement here, we conclude from the admissions of the appellants in the pleadings and affidavits, and the entire legal context of the transaction that the parties consciously contracted to release all claims which might arise against Johannes (Civ. Code, §§ 1639, 1641, 1643, 1644, 1647; *Crow* v. *P. E. G. Constr. Co., supra,* 156 Cal.App.2d at p. 277; *Folden* v. *Lobrovich, supra,* 171 Cal.App.2d 627, 630; *William B. Logan & Associates* v. *Monogram Precision Industries, supra,* 184 Cal.App.2d at pp. 16-17). The language of the contract terminating relations between the parties being clear, explicit and certain, and not involving absurdity, the trial court is justified in interpreting it and ascertaining the intent of the parties from the language thereof. (*Averett* v. *Garrigue* (1946) 77 Cal.App.2d 170 [174 P.2d 871].)

The question whether the writing is the complete expression of the agreement of the parties is a question of law (*Thoroman* v. *David* (1926) 199 Cal. 386, 390 [249 P. 513]). It is clear that in saving costs by canceling out these contractual services, the appellants were on notice that without such supervision and further architectural services deficiencies in performance might arise, which would be uncorrected, ambiguous plans might not be made certain by interpretation, and expanded by working drawings. Such future damage thereby was legally in their contemplation in signing the release (Civ. Code, § 19; cf. *Benenato* v. *McDougall* (1913) 166 Cal. 405 [137 P. 8]). Any businessman contemplating a $900,000 project would be on notice that such a course of action risked being pennywise and pound foolish. The basis of the contractor's claim is that by failing to provide the architectural services after the discharge of Johannes, the project was in effect a ship without a rudder, whereby his damages were occasioned.

It does not appear unequivocally that there are in fact any present deficiencies or damages due to the plans and specifications prepared by Johannes. Appellants' affidavits state there is damage as *complained of in the cross-complaint of the co-owners.* But this cross-complaint, as indicated above, alleges they have no means of knowing or ascertaining the respective liabilities of the contractor and the architect but allege that appellants' damage is the result of the negligence and carelessness of one or both of such cross-defendants. Despite the lapse of five years since the discharge of Johannes, appellants' counsel in argument before us conceded that as

of then they did not have any more definite claim of injury than that equivocally alleged in the cross-complaint.

Their only right to terminate the contract under section 11 thereof, rested upon the existence of claimed deficiencies in performance by Johannes. (The termination was recrudescence of a former application to FHA on December 31, 1964 to dispense with supervision, perhaps to save money, as admitted in an exhibit to the affidavit of appellant Fuller.) Any settlement with Johannes based upon the premise of existing deficiencies justifying their action put appellants on notice and inquiry as to all matters of his past performance. The plans and specifications were before them. The architect was to have been their agent to interpret and supervise their implementation. Appellants' decision to proceed alone without the aid of such agent implied that they considered themselves qualified to pass upon the plans, specifications and the work done thereunder.

A summary judgment which terminates unmeritorious litigation may be a "drastic remedy" as applied to a plaintiff but at the same time to the same degree it may be just and beneficial to a defendant.

Both the codes and decisional law give a plaintiff every reasonable opportunity to plead and present a cause. Justice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one. A defendant, though his liability be speculative and asserted contingently, is subject to depositions, interrogatories, pleading, court appearances, attorneys fees and costs of preparing his defense. Though ultimately a winner, for the absence of a meritorious cause against him, he may still be a loser, because of the cost in time and money of the process to which he was subjected. His only "showdowns" to stop unmeritorious claims against him are the general demurrer, seldom effective with the pleading latitude given plaintiffs; and the motion for summary judgment. ■ The motion is not to try the disputed facts; but is to find whether there are any facts to dispute, sufficient to support the complaint or the answer made to it.

■ We have concluded that as a matter of law the trial court did not abuse its discretion when it found no triable issue of fact to exist in this cause, and we have found the absence of a legal cause of action in the first place.

The judgment is affirmed. Respondent is awarded his costs.

Shoemaker, P. J., and Taylor, J., concurred.